GROVER CECIL CLARK v. CLAY ROBERTS AND ELMER C. CLARK.

(Filed 15 January, 1965.)

**1. Negligence § 11—**

Every person having the capacity to exercise ordinary care for his own safety is required to do so, and if his failure to do so concurs and co-operates as a proximate cause of the injury complained of he is guilty of contributory negligence.

**2. Negligence § 1—**

Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury.

**3. Negligence § 11—**

A person can not be held contributorily negligent in failing to avoid injury from dangerous machinery unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger.

**4. Master and Servant § 24—**

It is the duty of the employer to warn the employee of dangers known to the employer and not known to the employee or not discoverable in the exercise of due care, or dangers which the employee, by reason of youth, inexperience or incompetency, could not appreciate.

**5. Master and Servant § 22—**

The employer is not an insurer of the safety of his employee.

**6. Master and Servant § 29—   Plaintiff's evidence held to disclose contributory negligence barring recovery as a matter of law.**

Plaintiff, 21 years old with a degree in civil engineering, employed to work on a farm, was injured when his arm was cut by knives of a silage cutter. Plaintiff's evidence tended to show that he was ordered to unstop the blower of the silage cutter used in the field, that he removed the inspection plate and stuck his arm some foot or more down the shaft into the box containing the knives, that the shaft on which the knives were mounted was attached to a fly-wheel which continued turning for some time after the power was cut off, and that plaintiff knew it was dangerous to put his hand into the box when the knives were moving, and that plaintiff could have ascertained whether the flywheel was still turning before he inserted his arm into the box but failed to do so. *Held:* The evidence discloses contributory negligence as a matter of law barring recovery.

**7. Negligence § 26—**

The evidence will be considered in the light most favorable to plaintiff in passing upon the question of whether plaintiff's own evidence discloses contributory negligence as a matter of law.

APPEAL by plaintiff from a judgment of compulsory nonsuit entered at the close of his evidence by *Patton, J.,* March-April 1964 Regular Session of MADISON.

*A. E. Leake for plaintiff appellant.*
*Williams, Williams & Morris by William C. Morris, Jr., for defendant appellees.*

PARKER, J.   In 1963 defendant Elmer C. Clark owned and operated a farm in Madison County. Defendant Clay Roberts was the manager of his farm. On 26 August 1963 plaintiff, son of defendant Clark, was twenty-one years old and had a bachelor of science degree in civil engineering from North Carolina State College. On that date he was employed by the North Carolina State Highway Commission as a civil engineer in a two-year training program at a salary in excess of $500 a month, and was also employed by his father to do part-time work as a laborer on his farm under the supervision of defendant Roberts. Plaintiff brought this suit alleging that he was injured by the negli-

gence of the defendants on 26 August 1963, when, acting under the instructions of defendant Roberts, he inserted his left hand and forearm into a 1963 New Holland Field Chopper, Model 616, to see if it was clogged by silage, and if so, to remove it, and in consequence his left hand was severely cut by the knives therein. Plaintiff alleges that his injuries were proximately caused by the negligence of defendant Roberts, for which negligence defendant Clark is legally responsible, in the following respects: (1) He negligently failed to give plaintiff proper supervision; (2) he negligently failed to instruct and inform plaintiff properly as to the hazards and dangers of his employment and as to the proper safety procedures to follow in avoiding the said hazards and dangers, when he knew, or should have known, that this plaintiff was young and unfamiliar with the operation of dangerous farm machinery; (3) he negligently instructed plaintiff to place his hand in a position where it would encounter the rapidly moving knives of the Field Chopper; (4) he negligently instructed plaintiff to assist in the operation of dangerous farm machinery that was not equipped with proper safety devices; (5) he negligently instructed plaintiff to assist in the operation of defective farm equipment, and (6) he negligently instructed plaintiff to assist in the operation of the Field Chopper that provided no method of seeing inside the blower, or of observing the knives, and provided no way of checking the blower and knives to see if they were clogged, and if so, no way of unclogging them, other than plaintiff's inserting his hand into the blower.

The defendants filed a joint answer in which they deny any negligence on their part. As a further answer and as a first defense to plaintiff's action, they plead contributory negligence of plaintiff; as a second defense, they plead that defendant Clark exercised due care in selecting his manager Roberts, and if Roberts was guilty of any negligence, which is denied, then such negligence was that of a fellow servant for which he, Clark, was not liable; and as a third defense, they plead assumption of risk by plaintiff.

In addition to the facts stated in the first four sentences in the first paragraph of this opinion, which are taken from plaintiff's evidence, this is a summary of plaintiff's evidence, except when quoted: On the afternoon of 26 August 1963 he and Clay Roberts were cutting down corn on his father's farm to be placed in a silo. In doing this work, they were using a Ford Diesel Tractor, a New Holland Field Chopper, Model 616, and a Chevrolet truck. Defendant Clark had purchased this Field Chopper about thirty days before 26 August 1963 from the Blue Ridge Tractor and Implement Company in West Asheville. It is a Field Chopper in wide use in the area and had not been altered in any

way. The Field Chopper was pulled through the field by the Ford Diesel Tractor driven by Roberts, which furnished all the power for its operation. At the rear end of the Ford Diesel Tractor is a drive shaft connected directly with its motor, and connected to this drive shaft is a unit referred to as a power take-off unit, and this is connected with a drive shaft on the Field Chopper by a spline, through which power from the tractor is transmitted to operate the chopping knives of the Field Chopper. Inside the Field Chopper is a box containing a shaft to which are attached its cutting or chopping knives. This shaft has ball bearings, is well lubricated, and makes no noise when running. A hub or flywheel outside the Field Chopper is attached to the shaft with the knives, is about ten inches in diameter, and is visible and turns when the shaft with the knives is turning inside the Field Chopper. When the tractor motor is running, and the power take-off is put into effect, and the clutch is released, the power flows from the tractor into the Field Chopper and its knives begin operation. When the power is cut off from the tractor, the drive shaft on the Field Chopper and the hub or flywheel stop, its noise in operation begins to decrease, but the knife shaft being mounted on ball bearings will run approximately a few minutes.

The Field Chopper cuts down corn in the field close to the ground, and then cuts the corn into small particles. The chopping knives cause air pressure to build up in the knife box, which forces the particles of cut corn into a "smokestack or stovepipe affair" at the end of the Field Chopper that runs up and over to the side so that the particles of cut corn are blown into a truck or wagon that is driven or pulled along the side of the Field Chopper, as the tractor pulls it through the cornfield. At the back of this Field Chopper is a round hole about three or four inches in diameter which is covered by an inspection plate which can be moved by a catch with a handle. This inspection plate is about a foot or foot and a half above the top of the knives. When the Field Chopper is in use, this plate covers the hole to prevent the particles of cut corn from blowing out through the rear end instead of through the stack or pipe affair. The inspection plate over the knives is about three feet long and about nine inches wide. The knives are not exposed upon taking this plate off. There is another shield immediately over the knives. When this shield is taken off, there is a small opening which permits one to see the edge of the knives and to see whether the knives are turning or not.

About six o'clock on this afternoon the corn going into the intake on the Field Chopper started piling up and was not going in it. Roberts cut off the tractor, stopping all power from the tractor to the Field

Chopper, got out and started pulling corn out of the intake of the Field Chopper to see what was causing it to clog up. At that time plaintiff was on the Chevrolet truck. Roberts told him to go and unstop the blower. Plaintiff testified on direct examination:

"On the afternoons of the previous week, he had shown me how to unstop this cutter, to hold it back of the silage cutter for pulling out the loose silage when the blower stopped up, and when the silage had stopped coming out of the chute at the top. (Admitted only as to defendant Roberts.) The blower was stopped up and there wasn't anything that could hurt you then. You could open the lid, take the silage out, and could start the cutter again and everything would start working again in a satisfactory manner.

"I had unstopped it in that manner previously a few times. I don't remember the exact number, a few times I'd say.

"Prior to this occasion on August 26th of last year, I had never run a field chopper of any form.

"After I had received this instruction to unstop the blower, I went to the rear of the field chopper, opened the lid, and put my hand in to pull out the loose silage. At that time, my hand hit the knives. The tractor was not in motion at the time. It had been cut off. The tractor's engine was not running at that time. It had been stopped between five and ten minutes. The chopper was not in motion at that time. It had not been moving for between five and ten minutes. Immediately before I put my hand in this opening, I looked at the chopper to see if I saw anything in motion. I did not see anything.

"It would not have been possible for me to see through the hole and see the knives.

"After I stuck my hand down in that hole, it was severely cut. * * * On the other occasions before this occasion, Clay Roberts had told me that when the blower was stopped up, nothing could happen; that there would be nothing moving and nothing could happen to me until he started the tractor and started the cutter going again. (Admitted only as to defendant Roberts.) My father, Elmer Clark, had not given me any instructions as to how to operate this piece of machinery. My father said Clay knew how to operate it."

Plaintiff testified on cross-examination:

"As I went back around the rear of the truck and back alongside the silage cutter, I did look at that shaft and that fly wheel

device. I didn't see it turning, but it evidently was. There was corn on it. A portion of that corn obstructed my view. I could have moved that corn off and could have then seen the whole thing. That is, by taking a corn stick or corn stalk, and pushing the stuff off of it, I could have seen the shaft and the fly wheel device. I didn't do that, I was to check the blower. No, sir, I did not push the corn off to see whether it was turning. * * *

"Prior to this time I had put my hand in there and cleaned out the back of this silage cutter a few times. * * * On this particular occasion, when I opened the inspection plate, there over the hole and put my arm in, I saw nothing. I couldn't see anything. I couldn't see what was down in the hole, and I couldn't see where I was placing my hand. * * * I did not take a corn stalk and push in there and push down against the knives to see if they were turning. I could have done so, and thus determined whether those knives were moving. * * * I put my hand in there approximately a foot or a foot and a half before I encountered the knives. * * * The knives on this shaft or axle would run freely for some time after the power was cut off. * * * They would run approximately a few minutes. * * * The power take off from the tractor had been cut off approximately five or ten minutes, somewhere in that range, because I sat in my truck some time before I ever got out. * * * When I put my hand in there I didn't know whether the knives were moving or not.

"* * * I did not have to be told not to put my hand in there on those knives when they were turning."

Plaintiff had grown up and worked on his father's farm. He had seen all kinds of farm machinery. He had operated a tractor pulling a mowing machine, a hay rake, disk harrows, and plows. He had worked around silage cutters two or three years before. During the summer of 1962 a New Holland Field Chopper, Model 616, had done contract work for his father, and he hauled silage from it. He knew where the knives were located in the Field Chopper in which he placed his hand and was cut. He testified on cross-examination: "I knew you could get hurt with farm machinery, if you didn't use it correctly. I knew that these knives in this silage cutter would cut you if they were turning and you stuck your hand in there. Anybody would know that if you stuck your hand in there on those knives and them turning they would get hurt." He had finished high school at Marshall, and had had two years pre-engineering courses at Mars Hill College before entering North Carolina State College.

Plaintiff's father, a witness for him, testified in part to this effect: He told plaintiff Roberts was familiar with and acquainted with the machinery, and to go to him for instructions. The hole in which his son stuck his arm, when he was cut, is located about twelve or eighteen inches above the knives, which are located in the knife box part of the Field Chopper. When the power is cut off from the tractor, the shaft with the knives "has free wheeling" and coasts. If the shaft with the knives was running, and he stuck his hand in there, he knows it would be cut.

Defendant Roberts, a witness for plaintiff, testified in part to this effect: He had full authority from defendant Clark to supervise the laborers and to instruct them what to do and how to do it. When he discovered the Field Chopper was clogged up, he turned off the motor on the tractor, went to the head of the Field Chopper, and was removing corn. He told plaintiff to go to the back of the Field Chopper and see if it was choked up. He had not given him any instructions about how to unclog it. He heard the inspection plate being thrown back and heard plaintiff holler.

Defendant Clark hired defendant Roberts as his farm manager upon the recommendation of his brother-in-law, Zeno Ponder. Roberts had worked two years for Ponder. Clark, after employing Roberts, then bought the Field Chopper in the instant case, so he could put up his own silage and not have to employ Ponder, as he had done before, to put up his silage. Defendant Clark had worked for the American Enka Company for twenty-two years, and also farmed. This was the first Field Chopper he had owned.

We find no evidence in the record to support the allegations in the complaint that the New Holland Field Chopper, Model 616, here was defective or that it was not equipped with proper safety devices. Plaintiff's evidence affirmatively shows that defendant Clark had purchased it about thirty days before plaintiff was injured from Blue Ridge Tractor and Implement Company in West Asheville, that it is in general use in the area, and had not been altered. His evidence also affirmatively shows that its cutting knives attached to a shaft were in a knife box inside it, and that over these knives was a shield and over this an inspection plate. There is no evidence in the record of defective materials or workmanship or that it was in disrepair. On the record before us there is no evidence it was an inherently dangerous instrumentality. See *Kientz v. Carlton*, 245 N.C. 236, 96 S.E. 2d 14, a lawn mower case.

There is no evidence in the record before us to support the allegation in the complaint that Roberts instructed plaintiff to place his hand

in a position where it would encounter the rapidly moving blades of the Field Chopper, when they were moving.

In the circumstances disclosed by the record before us, we are constrained to hold that the judgment of compulsory nonsuit below should be sustained, if not upon the principal question of liability, then upon the ground of plaintiff's contributory negligence.

Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant contributes to the injury complained of, he is guilty of contributory negligence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury. *Chaffin v. Brame,* 233 N.C. 377, 64 S.E. 2d 276; *Manheim v. Blue Bird Taxi Corporation,* 214 N.C. 689, 200 S.E. 382; 65 C.J.S., Negligence, § 118, a, b.

Plaintiff is subject to this universal rule, but his conduct on this occasion "must be judged in the light of the general principle that the law does not require a person to shape his behavior by circumstances of which he is justifiably ignorant, and the resultant particular rule that a plaintiff cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves." *Chaffin v. Brame, supra.*

This Court said in *Watson v. Construction Company,* 197 N.C. 586, 150 S.E. 20:

> "[I]t is conceded to be the duty of an employer to warn his employees concerning dangers which are known to him, or which in the exercise of reasonable care should be known to him, and are unknown to his employees or are undiscoverable by them in the exercise of due care, and concerning dangers which, by reason of youth, inexperience or incompetency the employees do not appreciate. Under these conditions unless the servant is warned or instructed he does not assume the risk of such dangers, and if without fault or negligence on his part he receives an injury in consequence of not having been warned or instructed the master will be liable to him in damages."

See in accord *Steeley v. Lumber Co.,* 165 N.C. 27, 80 S.E. 963, where numerous authorities are cited.

A master or employer is not an insurer of the safety of his servant or employee. *Baker v. R. R.,* 232 N.C. 523, 61 S.E. 2d 621.

Plaintiff's evidence plainly shows these facts: At the time of his injury he was twenty-one years old, and held a bachelor of science degree in civil engineering from North Carolina State College. On that date he was employed by the North Carolina State Highway Commission as a civil engineer in a two-year training program at a salary in excess of $500 a month, and was also employed by his father to do part-time work as a laborer on his farm under the supervision of the manager Roberts. He had finished high school at Marshall, and had had two years pre-engineering courses at Mars Hill College before entering North Carolina State College. He had grown up and worked on his father's farm. He had seen all kinds of farm machinery. He had operated a tractor pulling various farm implements. He had worked around silage cutters two or three years before. The preceding summer he had worked around a Field Chopper similar to the one that injured him, though he did not operate it but merely hauled the particles of cut corn to the silo. He knew where the cutting knives were in the Field Chopper in the instant case. He knew a person could get hurt with farm machinery, if it is not used correctly, He testified: "I knew that these knives in this silage cutter would cut you if they were turning and you stuck your hand in there. Anybody would know that if you stuck your hand in there on those knives and them turning they would get hurt." He knew that when the power was cut off on the tractor to the Field Chopper that the shaft to which the cutting knives were attached was mounted on ball bearings, made no noise when running, and would turn for several minutes after the power was cut off. There was no need for Roberts or his father to instruct him as to the danger of sticking his hand in the Field Chopper in proximity to the chopping knives when they were moving, because he knew that as well as either or both of them did. Roberts told him to go to the Field Chopper and see what was causing it to clog up. When he arrived, a portion of the corn obstructed his view. By taking a cornstalk and pushing the corn off, he could have seen the shaft and the flywheel and whether it was running. That he did not do. He did not push the corn off to see whether the knives were turning. He could have taken a cornstalk and pushed it in the Field Chopper to determine whether the knives were moving. This he did not do. When he opened the lid over the knives, he could not see whether the knives were moving or not. Under such circumstances, and acting with actual knowledge and appreciation of the danger of sticking his hand into the Field Chopper in close proximity to its chopping knives if they were moving, he stuck his left hand and forearm into the Field Chopper about a foot or foot and a half deep to see if it was clogged, and was severely cut by the moving knives. Considering plain-

tiff's own evidence in the light most favorable to him, as we are required to do in considering a motion for judgment of compulsory nonsuit on the ground of contributory negligence, *Ramey v. R. R.*, 262 N.C. 230, 136 S.E. 2d 638, it leads to the unescapable conclusion that plaintiff failed to use the ordinary care that an ordinarily prudent person would have exercised under the same or similar circumstances to avoid injury to himself, and that such failure contributed proximately to his injuries. Plaintiff proved himself out of court. *Lincoln v. R. R.*, 207 N.C. 787, 178 S.E. 601. The judgment of compulsory nonsuit below is

Affirmed.