LUTZE HAHNE, Plaintiff v. JOHN F. HANZEL, Defendant

WILLIE M. EASTERWOOD and RAYMOND MONROE, Plaintiffs v. DANIEL BAUGUESS; INVINCA-SHIELD, INC.; and JOHN F. HANZEL, Defendants

No. COA03-72

(Filed 2 December 2003)

## Negligence— purchase of stock—contributory negligence

The trial court did not err by entering summary judgment in favor of defendant on plaintiffs' negligence claims arising from their purchases of certain stock, because the doctrine of contrib-utory negligence precludes any recovery by plaintiffs on these facts when: (1) none of the three plaintiffs reviewed or even requested financial data for the two companies before purchas-ing at least tens of thousands of dollars of stock in one or both corporations; and (2) each plaintiff signed an investment letter stating, in effect, that his decision to purchase the stocks was not based upon any representation as to the stock's likely per-formance, but rather upon his independent examination and

judgment of the company's prospects with the understanding that there was an inherent economic risk involved.

Appeal by plaintiffs from judgment entered 4 November 2002 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 October 2003.

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Allan R. Gitter and Douglas R. Vreeland, for plaintiffs-appellants.*

*Poyner & Spruill L.L.P., by E. Fitzgerald Parnell, III and Rebecca B. Wofford, for defendant-appellee.*

ELMORE, Judge.

Lutz Hahne, Willie M. Easterwood, and Raymond Monroe (collectively, plaintiffs) appeal from entry of summary judgment in favor of John F. Hanzel (defendant) on their negligence claims arising from their purchases of certain stock. Because we conclude the doctrine of contributory negligence precludes any recovery by plaintiffs on these facts, we affirm.

On 26 January 2001, plaintiffs Easterwood and Monroe filed an action asserting claims against defendant and others for violation of state and federal securities law, legal malpractice, and negligence, all in connection with the purchase of stock in Invinca-Shield, Inc. (Invinca-Shield) by Easterwood and Monroe. On 18 April 2002, plaintiff Hahne filed an action alleging a single cause of action, negligence, against defendant, arising from Hahne's purchases of stock in Invinca-Shield and another corporation, Golf Pro Savings, Inc. (Golf Pro). On 22 April 2002, Easterwood and Monroe voluntarily dismissed without prejudice all their claims against all defendants, save the negligence claim against Hanzel. Defendant thereafter filed motions for summary judgment in each case, and on 21 August 2002 a consent order was entered allowing consolidation of the cases for pretrial purposes. Thus, at the time defendant's motions for summary judgment were heard, the only remaining claims against defendant in either case were for negligence arising out of plaintiffs' purchases of stock in either Invinca-Shield, Golf Pro, or both.

On 4 November 2002, the trial court granted summary judgment in defendant's favor on all of plaintiffs' remaining claims. From this judgment, plaintiffs now appeal.

The record evidence reveals that plaintiff Monroe engaged defendant, an attorney, to incorporate various businesses and handle

other legal matters unrelated to the purchase of securities, beginning in 1996. At his deposition, Monroe testified that while visiting defendant's office to talk about "some other matter," defendant encouraged him to invest in Invinca-Shield. Monroe testified that defendant characterized Invinca-Shield as being in "excellent financial condition," but Monroe did not ask to see any financial statements of Invinca-Shield prior to making his investment. On 16 February 2000, Monroe purchased $70,000.00 worth of Invinca-Shield stock by delivering to defendant a check, made payable to defendant as trustee for Invinca-Shield. On 18 February 2000, Monroe executed a share subscription agreement and an accompanying investment letter, which provided in pertinent part as follows:

> 2. Subscriber is not acquiring the Shares based upon any representation, oral or written, by any person with respect to the future value of, or income from, the Shares but rather upon an independent examination and judgment as to the prospects of [Invinca-Shield]; and,
>
> . . . .
>
> Subscriber acknowledges that Subscriber must continue to bear the economic risk of the investment in the Shares for an indefinite period . . . .
>
> . . . .
>
> . . . . Acceptance by Subscriber of the certificate representing the Shares shall constitute a confirmation by Subscriber that all agreements and representations made herein shall be true and correct at such time.[1]
>
> . . . .

Monroe testified that defendant did not try to keep him from reading these documents, and also that Monroe did not tell defendant he disagreed with any of the investment letter's terms.

At his deposition, plaintiff Easterwood testified that he met defendant twice prior to purchasing Invinca-Shield stock; each time they discussed matters unrelated to the purchase of securities. Easterwood regularly trades stocks online through E-trade, without the assistance of a broker, and has invested at least tens of thousands of dollars per year in stocks over the past decade. Easterwood testi-

---

1. As discussed below, each of the three plaintiffs signed investment letters containing this language.

fied that he decided to invest $30,000.00 in Invinca-Shield based solely on information given to him by plaintiff Monroe, and that he never spoke with defendant about Invinca-Shield prior to his investment. Easterwood was never a party to any discussions between Monroe and defendant regarding Invinca-Shield. Like Monroe, Easterwood did not ask to see any financial statements of Invinca-Shield prior to making his investment. On 18 February 2000, Easterwood also signed a share subscription agreement and an investment letter identical to the one executed by Monroe. Easterwood testified that defendant did not try to prevent him from reading the investment letter, and that he did not object to any of its terms.

Plaintiff Hahne testified at his deposition that he engaged defendant to incorporate several of his businesses, handle multiple real estate closings, and perform other legal services unrelated to the purchase of securities, beginning in 1997. Hahne testified that in late 1999, defendant encouraged him to invest in Invinca-Shield, and that he subsequently purchased $200,000.00 of Invinca-Shield stock "totally relying upon [defendant's] representations . . . . without having seen any financials, without having met anyone, because [defendant] says this is the greatest thing and they are going to go public . . . and this is going to be a tremendous investment." On or about 11 January 2000, Hahne signed a share subscription agreement and an investment letter identical to those executed by Monroe and Easterwood. Hahne testified that he did not read the investment letter before signing it, and that defendant did not prevent him from reading the document. Hahne neither requested nor reviewed any financial data regarding Invinca-Shield prior to investing. Hahne testified that in June 2000 defendant encouraged him to invest an additional $350,000.00 in Invinca-Shield, but that after he gave defendant the money, defendant invested it in Golf Pro Savings instead. Hahne signed a share subscription agreement and investment letter with terms identical to the Invinca-Shield documents, again without reading them. Hahne testified that during the time between his first investment in Invinca-Shield and his subsequent purchase of Golf Pro stock, he neither requested nor reviewed any financial data for either corporation.

"In a negligence action, summary judgment for defendant is proper where the evidence fails to establish negligence on the part of defendant, *establishes contributory negligence on the part of plaintiff,* or establishes that the alleged negligent conduct was not the

proximate cause of the injury." *Williams v. Power & Light Co.*, 36 N.C. App. 146, 147, 243 S.E.2d 143, 144 (1978), *rev'd on factual grounds*, 296 N.C. 400, 250 S.E.2d 255 (1979) (emphasis added).

Our Supreme Court has explained the doctrine of contributory negligence as follows:

> Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant contributes to the injury complained of, he is guilty of contributory negligence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury.

*Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965). The defendant has the burden of proving contributory negligence, and the existence of contributory negligence is "rarely appropriate for summary judgment, and only where the evidence establishes a plaintiff's negligence so clearly that no other reasonable conclusion may be reached." *Martishius v. Carolco Studios, Inc.*, 355 N.C. 465, 479, 562 S.E.2d 887, 896 (2002). After carefully considering the record, the parties' deposition testimony, and the arguments of counsel, we conclude that this is such a case.

The record evidence shows that each of the three plaintiffs were experienced investors who were actively seeking investment opportunities involving substantial sums of money when defendant encouraged plaintiffs Monroe and Hahne to purchase Invinca-Shield stock in late 1999-early 2000. By his own admission, plaintiff Easterwood never even spoke to defendant about Invinca-Shield prior to purchasing $30,000.00 worth of stock in the company, instead relying solely on information given to him by plaintiff Monroe. None of the three plaintiffs reviewed, or even requested, financial data for Invinca-Shield or Golf Pro before purchasing at least tens of thousands of dollars of stock in one or both corporations. Only plaintiff Monroe made any effort to speak with Invinca-Shield management or inspect the company's facilities prior to investing, and Monroe testified that he invested $70,000.00 based on what he saw and heard while touring the facility and speaking with an Invinca-Shield employee. Each plaintiff signed an investment letter stating, in effect, that his decision to purchase the stock was not made based upon any representation as to the stock's likely performance, but rather upon

his independent examination and judgment of the company's prospects, with the understanding that there was an inherent economic risk involved. Plaintiff Hahne, by his own admission, did not even read the share subscription agreement or investment letter before signing off on a $200,000.00 stock purchase, and he subsequently made an additional $350,000.00 investment, again without undertaking any independent investigation or even reading the transaction documents.

Because we conclude that on these facts, the contributory negligence of all three plaintiffs has been so clearly established that no other reasonable conclusion may be reached, the trial court's order granting summary judgment in defendant's favor is affirmed. *Carolco Studios, Inc.*, 355 N.C. at 479, 562 S.E.2d at 896.

Affirmed.

Judges WYNN and TIMMONS-GOODSON concur.