PIRAINO BROTHERS, LLC, Plaintiff v. ATLANTIC FINANCIAL GROUP, INC.; McKEE ESTATES, LLC.; DARRELL AVERY, II; JEFFERY L. AVERY; ROBERT N. BURRIS, and BURRIS, MacMILLAN, PEARCE & BURRIS, PLLC; DAVID BAKER; and BAKER & BAKER, PLLC; Defendants

No. COA10-831

(Filed 19 April 2011)

**1. Trusts— breach of express trust—civil conspiracy—conversion—summary judgment proper**

   The trial court did not err in granting summary judgment to the Burris defendants on plaintiff's claims for breach of an express trust and civil conspiracy. Plaintiff failed to preserve the issue of an express trust for appellate review and the Burris defendants did not owe plaintiff a fiduciary duty. Furthermore, plaintiff did not argue that the trial court erred in dismissing plaintiff's underlying conversion claim.

**2. Negligence— professional negligence—contributory negligence—evidence admissible—jury instruction proper**

   The trial court did not err in admitting evidence about and instructing the jury on contributory negligence in plaintiff's professional negligence action against defendant Baker. Contributory negligence is a defense to a claim of professional negligence by attorneys, and the evidence supported a reasonable inference of contributory negligence on plaintiff's part.

**3. Negligence— professional negligence—expert testimony—standard of care**

   Plaintiff's argument in a professional negligence case that defendant Baker's expert was allowed to testify about the standard of care owed to a commercial lender rather than that applicable to an individual investor was rejected. The expert testified that the standard of care he was discussing was applicable to a non-regulated private lender such as plaintiff.

Appeal by Plaintiff from orders entered 16 July and 28 September 2009 and judgment entered 30 December 2009 by Judge Jesse B. Caldwell, III, in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 January 2011.

*Katten Muchin Rosenman LLP, by Richard L. Farley and Rebecca K. Lindahl, for Plaintiff.*

*Horack, Talley, Pharr & Lowndes, P.A., by Zipporah Basile Edwards and Robert B. McNeill, for Defendants David Baker and Baker & Baker, PLLC.*

*Poyner Spruill LLP, by T. Richard Kane and Andrew H. Erteschik, for Defendants Robert N. Burris and Burris, MacMillan, Pearce & Burris, PLLC.*

STEPHENS, Judge.

On 12 May 2008, Plaintiff Piraino Brothers, LLC, commenced this action against Defendants Atlantic Financial Group, Inc. ("Atlantic"), McKee Estates, LLC ("McKee"), Darrell Avery, II, and Jeffery L. Avery ("Jeff Avery") (collectively, "the Avery brothers"), Robert N. Burris ("Burris"), Burris, MacMillan, Pearce & Burris, PLLC ("the Burris firm"), David Baker ("Baker"), and Baker & Baker, PLLC. In its amended complaint of 9 September 2008, Plaintiff included claims of: default and breach of contract against Atlantic; breach of trust agreement against Burris and the Burris firm (collectively, "the Burris Defendants"); fraud against Atlantic and Darrell Avery, II; civil conspiracy against Atlantic, McKee, and the Avery brothers; tortious interference with a contract against Jeffery L. Avery and McKee; professional negligence against Baker and his firm (collectively, "the Baker Defendants"); conversion against the Avery brothers and McKee; and unfair and deceptive trade practices against Atlantic, McKee, and the Avery brothers. On 7 October 2008, the Burris Defendants moved for summary judgment. On 8 December 2008, Plaintiff moved to amend its complaint to add additional claims against the Burris Defendants for conversion, civil conspiracy, and aiding and abetting.

On 22 May 2009, the Baker Defendants moved for summary judgment. The same day, the Burris Defendants moved to supplement their motion for summary judgment. On 5 June 2009, the trial court heard both Plaintiff's and the Burris Defendants' motions, partially granting Plaintiff's motion to amend its complaint to add conversion and civil conspiracy claims, denying the addition of the aiding and abetting claim, and granting the Burris Defendants' motion for summary judgment on the existing claims. The Burris Defendants then moved for summary judgment on the new claims, which the trial court granted on 28 September 2009. The claims against the remaining Defendants were tried at the 28 September 2009 Civil Session of

**PIRAINO BROS., LLC v. ATL. FIN. GRP., INC.**

[211 N.C. App. 343 (2011)]

Mecklenburg County Superior Court. The jury returned the following verdicts: in favor of Plaintiff on its unfair and deceptive trade practices and civil conspiracy claims against Atlantic, McKee, and the Avery brothers; in favor of Plaintiff on its conversion claims against McKee and the Avery brothers; and in favor of Plaintiff on its claim for deficiency against Atlantic. On these verdicts, the jury awarded Plaintiff damages totaling $7,100,001.00 plus prejudgment interest. In addition, although the jury found Baker professionally negligent, it also found Plaintiff contributorily negligent.

On 30 December 2009, the trial court entered judgment in favor of Plaintiff on Plaintiff's claims for conversion, civil conspiracy, and unfair and deceptive trade practices, and in favor of Baker on Plaintiff's claim for professional negligence. Plaintiff appeals. As discussed below, we affirm.

This case arises from a land development project gone awry. Giusto and Enrico Piraino are brothers whose company manufactures and supplies frozen Italian foods. In 2005, the Piraino brothers met the Avery brothers. Darrell Avery's company, Atlantic, had a contract to purchase real property in Union County which it planned to develop as residential lots. However, Atlantic lacked the financial wherewithal to execute this plan. Darrell Avery suggested that the Piraino brothers invest in the project, and, following negotiations, Baker formed Piraino Brothers, LLC, which then contracted with Atlantic on the property transaction. The Burris firm served as Atlantic's attorneys in the matter.

After this initial transaction closed successfully, Darrell Avery told Giusto Piraino that Atlantic had a contract to buy from William Davis Cauthen ("Cauthen") twenty-seven acres on McKee Road in Mecklenburg County ("the property") for $2,800,000, and that a national builder was interested in developing it. Darrell Avery asked Plaintiff to fund this project, and, encouraged by the success of the initial transaction, Plaintiff agreed. Plaintiff then asked Baker to review the draft contract ("the agreement") prepared by the Burris firm on behalf of Atlantic.

Unknown to Plaintiff, Atlantic's contract to purchase the property was actually for $1,800,000 rather than $2,800,000. In addition, Plaintiff and Baker did not know that, on 18 August 2005, the Burris firm had prepared an assignment of Atlantic's contract for the property to McKee, an entity the Burris firm had formed in South Carolina days earlier. On the same day, the Burris firm conducted an unfunded

closing with McKee and Cauthen, anticipating that Cauthen would receive $1,800,000 from the funds to be provided by Plaintiff.

The draft agreement between Atlantic and Plaintiff provided that, using a portion of the funds from Plaintiff, "Atlantic or its designee" would acquire the property from Cauthen. Baker repeatedly asked that the words "or its designee" be removed from the contract, but the Burris firm refused to do so. All drafts of the agreement provided that the funds would be wired by Plaintiff to the Burris firm "IN TRUST" before disbursement. When the Burris firm emailed the final contract to Baker, the phrase "or its designee" remained, as Baker pointed out to Plaintiff. Baker advised the Piraino brothers that they could strike through the words if they wished to do so. Instead, without making any changes to the agreement, Plaintiff wired the money to the Burris firm's trust account.

Although the Burris firm had not received a signed agreement from Plaintiff, Burris immediately disbursed the funds to McKee. McKee funded the previous closing with Cauthen for $1,800,000, and transferred the property to Atlantic for $2,800,000. Atlantic then executed a $2,800,000 promissory note and first-priority deed of trust in favor of Plaintiff. The Burris firm then sent copies of these documents to Baker. Burris testified that he also sent a copy of the settlement statement, which showed the flip through McKee, to Baker. However, Baker testified at trial that he did not receive it.

After the land transfer was completed, in November 2005 and February 2006, Atlantic requested and received draws on construction funds from Plaintiff. However, after seeing little progress at the development, Plaintiff refused further requests for funds. In late 2006, Giusto Piraino spoke to a real estate agent about finding a buyer for the property. The agent reviewed the public records and informed Giusto Piraino about the flip through McKee. He also discovered that, although Plaintiff had paid $1,400,000 in construction funds to Atlantic, less than $80,000 of that sum was used to develop the property. Atlantic had spent the remainder of the money on luxury vehicles, televisions, and watches. This lawsuit followed Plaintiff's receipt of this information.

Plaintiff raises two issues in this appeal, arguing that the trial court erred in (I) granting summary judgment for the Burris Defendants on Plaintiff's claims of breach of an express trust and civil conspiracy, and (II) admitting expert testimony on the issue of Plaintiff's contributory negligence and submitting this issue to the jury. As discussed below, we affirm on both issues.

PIRAINO BROS., LLC v. ATL. FIN. GRP., INC.

[211 N.C. App. 343 (2011)]

*I*

[1] Plaintiff first argues that the trial court erred in granting summary judgment to the Burris Defendants because there are genuine issues of material fact on Plaintiff's claims of breach of an express trust and civil conspiracy. We disagree.

In reviewing the trial court's decision to grant a motion for summary judgment, we consider

> whether there is any genuine issue of material fact and whether the moving party is entitled to a judgment as a matter of law. *Wilmington Star News v. New Hanover Regional Medical Center*, 125 N.C. App. 174, 178, 480 S.E.2d 53, 55, *appeal dismissed*, 346 N.C. 557, 488 S.E.2d 826 (1997). Further, the evidence presented by the parties must be viewed in the light most favorable to the non-movant. *Id.*

*Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). Further,

> [i]n a motion for summary judgment, the movant has the burden of establishing that there are no genuine issues of material fact. The movant can meet the burden by either: 1) [p]roving that an essential element of the opposing party's claim is nonexistent; or 2) [s]howing through discovery that the opposing party cannot produce evidence sufficient to support an essential element of his claim nor [evidence] sufficient to surmount an affirmative defense to his claim.
>
> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Hines v. Yates*, 171 N.C. App. 150, 157, 614 S.E.2d 385, 389 (2005) (internal quotation marks and citations omitted). "On appeal, an order allowing summary judgment is reviewed de novo." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

Plaintiff first contends that there is a genuine issue as to whether the Burris Defendants breached an express trust. Plaintiff contends an express trust was created when it wired funds for the purchase of

the property to the Burris firm. However, Plaintiff did not raise the issue of an express trust when the Burris Defendants' motion for summary judgment was heard in the trial court. Instead, Plaintiff argued two other theories in opposing the motion for summary judgment: (1) that the Burris Defendants did not adhere to the standard of care in disbursing the funds, and (2) that the actions of the Burris Defendants were the proximate cause of Plaintiff's losses. '

> Our Supreme Court "has long held that where a theory argued on appeal was not raised before the trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount' " in the appellate courts. *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5-6 (1996) (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)); *see also State v. Benson*, 323 N.C. 318, 321-22, 372 S.E.2d 517, 519 (1988) (holding that where [the] defendant relied on one theory at trial as basis for written motion to suppress and then asserted another theory on appeal, "no swapping horses" rule applied); *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982). According to Rule of Appellate Procedure 10(b)(1), in order to preserve a question for appellate review, the party must state the specific grounds for the ruling the party desires the court to make. N.C.R. App. P. 10(b)(1) (2002). "The defendant may not change his position from that taken at trial to obtain a 'steadier mount' on appeal." *State v. Woodard*, 102 N.C. App. 687, 696, 404 S.E.2d 6, 11 (1991) (quoting *State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988)), *disc. review denied*, 329 N.C. 504, 407 S.E.2d 550 (1991).

*State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002). Because Plaintiff presents a different theory on appeal than it argued at trial, this argument is not properly preserved. *Id.* at 124, 573 S.E.2d at 686. Thus, we do not consider or address Plaintiff's arguments on the existence and breach of an express trust.

Plaintiff also contends that summary judgment was not proper because the agreement was, at best, ambiguous as to whether the Burris Defendants were allowed to disburse funds to McKee as part of the real estate flip. Specifically, Plaintiff asserts that expert witnesses disagreed about the meaning of the word "designee" in the agreement. However, Guisto Piraino stated in his deposition that, although Plaintiff could have conditioned disbursement on specific terms, it failed to do so.

This Court considered a similar situation in *Noblot v. Timmons*, 177 N.C. App. 258, 628 S.E.2d 413 (2006). In *Noblot*, the plaintiffs were

leasing a house from the Timmonses with an option to purchase. *Id.* at 259, 628 S.E.2d at 414. Following disputes regarding the lease, the defendant attorneys agreed to represent the Timmonses and receive the plaintiffs' monthly rental payments on behalf of the Timmonses. *Id.* at 259-60, 628 S.E.2d at 414. "After several months' rental payments had accumulated in defendant[ attorney]s' trust account, the Timmonses requested [the] defendant[ attorney]s to disburse the funds to them[,]" and after consulting the State Bar, the "defendant [attorney]s disbursed the funds to their clients. [The d]efendant [attorney]s did not disclose this disbursement to [the] plaintiffs." *Id.* at 260, 628 S.E.2d at 414. The trial court granted summary judgment to the defendant attorneys and the plaintiffs appealed, contending the defendant attorneys "should: (1) not have disbursed the rental proceeds to the Timmonses; (2) have disclosed the fact that they disbursed the funds to the Timmonses; and (3) have informed [the] plaintiffs' attorney of the status of the pending foreclosure actions." *Id.* at 262, 628 S.E.2d at 415. The plaintiffs also argued that a fiduciary obligation arose when they relied on the defendant attorneys' status as members of the legal profession to have them "receive and distribute their monies in accordance with the Trust Agreement reached between the [p]laintiffs, the Timmonses, and the [attorney d]efendants." *Id.* at 262-63, 628 S.E.2d at 415. This Court affirmed the trial court, noting that the defendant attorneys represented the Timmonses, owed a fiduciary duty to the Timmonses, and held the funds for the benefit of the Timmonses. *Id.* at 263, 628 S.E.2d at 415-16. In addition, we held that the defendant attorneys were obligated under Rule 1.15-2(m) of the North Carolina State Bar Rules of Professional Conduct to disburse the plaintiffs' rental payments to the Timmonses upon request. *Id.* at 263, 628 S.E.2d at 416. "A lawyer shall promptly pay or deliver to the client, or to third persons as directed by the client, any entrusted property belonging to the client and to which the client is currently entitled." *Id.* at 263, 628 S.E.2d at 415 (quoting North Carolina State Bar Rules of Professional Conduct, Rule 1.15-2(m)).

Similarly, here, the Burris Defendants represented Atlantic, not Plaintiff, and owed Atlantic, not Plaintiff, a fiduciary duty. Under Rule 1.15-2(m), the Burris Defendants were required to disburse the funds at the direction of their client Atlantic. The Burris Defendants did not owe a duty of care to Plaintiff because, as Plaintiff acknowledges, they had no attorney-client relationship with Plaintiff. The Courts of this State have held attorneys liable for actions that impact non-client third parties in only a few limited situations, none of which is present here. *See Title Ins. Co. of Minn. v. Smith Debnam Hibbert & Pahl,*

119 N.C. App. 608, 459 S.E.2d 801 (1995), *affirmed and modified in part*, 342 N.C. 887, 467 S.E.2d 241 (1996) (duty applies where the attorney renders a title opinion upon which the non-client is entitled to rely); *Jenkins v. Wheeler*, 69 N.C. App. 140, 316 S.E.2d 354 (1984) (duty applies where there is a complete unity of interests between the attorney's client and the non-client). We conclude that the trial court properly granted summary judgment to the Burris Defendants on this claim. Plaintiff's argument is overruled.

Plaintiff also argues that the trial court erred in granting summary judgment to the Burris Defendants on its claim for civil conspiracy. "The elements of a civil conspiracy are: (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Privette v. University of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989) (citations omitted). It is well established that "there is not a separate civil action for civil conspiracy in North Carolina." *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005). Instead, "civil conspiracy is premised on the underlying act." *Harris v. Matthews*, 361 N.C. 265, 273, n.2, 643 S.E.2d 566, 571, n.2 (2007). Where this Court has found summary judgment for the defendants on the underlying tort claims to be proper, we have held that a plaintiff's claim for civil conspiracy must also fail. *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 73 (2008); *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007); *Harvey, supra.*

Here, the underlying tort claim Plaintiff asserts in its brief is conversion.[1] However, Plaintiff does not argue error by the trial court in dismissing its conversion claim against the Burris Defendants. Because the underlying tort claim was dismissed, the trial court properly granted summary judgment to the Burris Defendants on Plaintiff's ancillary civil conspiracy claim. This argument is overruled.

## II

**[2]** Plaintiff next argues that the trial court erred in admitting evidence about and instructing the jury on contributory negligence in its action against Baker for professional negligence.[2] Thus, Plaintiff contends that it is entitled to a new trial against Baker on damages. We disagree.

---

1. Plaintiff alleged underlying torts of fraud, conversion, breach of trust and unfair and deceptive trade practices in its complaint.

2. In the trial court, Baker raised contributory negligence as a defense to Plaintiff's claim of professional negligence.

When instructing the jury in a civil case, the trial court has the duty to explain the law and apply it to the evidence on the substantial issues of the action. N.C. Gen. Stat. § 1A-1, Rule 51 (1990). *Pallet Co. v. Wood*, 51 N.C. App. 702, 703, 277 S.E.2d 462, *disc. review denied*, 303 N.C. 545, 281 S.E.2d 393 (1981). Pursuant to this duty, the trial court must instruct on a claim or defense if the evidence, when viewed in the light most favorable to the proponent, supports a reasonable inference of such claim or defense. *Id.* at 703, 277 S.E.2d at 463-64. Conversely, it is error for the trial court to instruct on a claim or defense where the evidence, when viewed in the light most favorable to the proponent, does not support a reasonable inference of such claim or defense.

*Wooten v. Warren*, 117 N.C. App. 350, 358, 451 S.E.2d 342, 347 (1994). Further, we review a jury instruction

contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such a manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . . Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002) (citations and quotation marks omitted).

Contributory negligence is a defense to a claim of professional negligence by attorneys, just as it is to any other negligence action. *Hahne v. Hanzel*, 161 N.C. App. 494, 588 S.E.2d 915 (2003), *disc. review denied*, 358 N.C. 543, 599 S.E.2d 46 (2004). The definition of contributory negligence is well-established:

Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant contributes to the injury complained of, he is guilty of contributory negligence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury.

*Id.* at 498, 588 S.E.2d at 917 (quoting *Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965)). "Contributory negligence 'is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant alleged in the com-

plaint to produce the injury of which the plaintiff complains.'" *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 140 N.C. App. 270, 278-79, 536 S.E.2d 349, 354 (2000) (quoting *Watson v. Storie*, 60 N.C. App. 736, 738, 300 S.E.2d 55, 57 (1983)).

Here, the evidence tended to show that the Piraino brothers met the Avery brothers and engaged in an initial, successful real estate investment with them, but never investigated the Avery brothers' business or real estate background and experience. The Piraino brothers also failed to check the Avery brothers' credit or criminal records or ask for references. Such investigations would have revealed Darrell Avery's two prior bankruptcies and the existence of a lawsuit filed against him by a bank for default on a real estate development loan. In any event, the Avery brothers did tell the Piraino brothers that they had no money to finance the real estate developments they sought to pursue. Yet, the Piraino brothers failed to investigate the value of the property, which was their only collateral on the loan to Atlantic, by having it appraised or even checking the tax records. Plaintiff also failed to ask for a written development plan or to review planning authority approval for the project as proposed by Atlantic. Plaintiff ignored the advice of Baker to get an appraisal of the property, impose escrow requirements, or strike the language about a designee from the contract with Atlantic. These failures were particularly significant where the Piraino brothers had been involved in numerous previous real estate transactions, and Giusto Piraino had overseen all financial matters for his family food distribution company over a period of some twenty years. Further, Giusto Piraino had served on the board of directors and the loan committee for Carolina Commerce Bank for a year prior to the investment at issue here. In that capacity, Giusto Piraino had reviewed various loan documents on a regular basis and was familiar with risk management practices. This evidence, in the light most favorable to Baker, supported a reasonable inference of contributory negligence on Plaintiff's part before and during its employment of Baker, and thus, the jury instruction was proper.

**[3]** We also reject the related argument by Plaintiff that Baker's expert was allowed to testify about the standard of care owed to a commercial lender rather than that applicable to an individual investor. In fact, the expert testified that the standard of care he was discussing was applicable to a non-regulated private lender such as Plaintiff. Plaintiff's arguments on these issues are overruled.

In sum, we conclude that the trial court did not err in granting summary judgment to the Burris Defendants on Plaintiff's claims of breach of an express trust and civil conspiracy or in admitting evidence about and instructing the jury on Plaintiff's contributory negligence in relation to its claim of professional negligence against Baker. The orders and judgment of the trial court are

AFFIRMED.

Judges GEER and ERVIN concur.