An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1095
NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014


WENDY M. DALE,
      Plaintiff,

      v.                                Orange County
                                        No. 12 CVS 1883
ALCURT CARRBORO, LLC; ALCURT
REALTY GROUP, INC.; ASPEN SQUARE
MANAGEMENT, INC.; NEPSA OPERATING
GROUP, LLC; AND OLD WELL OWNERS
ASSOCIATION,
      Defendants.


      Appeal by Plaintiff from order entered 23 April 2013 by Judge Robert H. Hobgood in Orange County Superior Court.   Heard in the Court of Appeals 5 February 2014.


      *Wendy M. Dale pro se.*

      *Pulley, Watson, King & Lischer, P.A., by Charles F. Carpenter, for Defendants Alcurt Carrboro, LLC; Alcurt Realty Group, Inc.; Aspen Square Management, Inc.; and Nepsa Operating Group, LLC.*

      *Cranfill Sumner & Hartzog LLP, by Patrick H. Flanagan and Mica Nguyen Worthy, for Defendant Old Well Owners Association.*


      STEPHENS, Judge.

*Procedural History and Factual Background*

This appeal arises from an assessment authorized by a condominium homeowners association. Plaintiff Wendy M. Dale owns a condominium unit in the Old Well Condominium development complex ("Old Well"),[1] located in Carrboro, North Carolina. Plaintiff, like all other condominium owners in Old Well, is a member of Defendant Old Well Owners Association ("OWOA"), a non-profit corporation that manages the condominium development.

In June 2012, Defendant Alcurt Carrboro, LLC, a Delaware limited liability company, ("Alcurt Carrboro") purchased more than three-quarters of the condominium units in Old Well. Defendant Alcurt Realty Group, Inc. ("ARG") is a Massachuesetts corporation and the managing member of Alcurt Carrboro.[2] Following the purchase, Alcurt Carrboro voted to appoint a new board of directors for OWOA and hired Defendant Aspen Square Management, Inc. ("Aspen"), a Massachusetts corporation, to handle OWOA's administrative affairs as well as to maintain the

---

[1] Plaintiff's unit is in section I of the complex which includes three sections of condominiums.

[2] In her complaint, Plaintiff designates both entities as "hereinafter, 'Alcurt[.]'"

Old Well common areas. Defendant Nepsa Operating Group, LLC ("Nepsa") is a Delaware limited liability company and the parent company of Aspen.[3]

In December 2012, the new board of directors sent a notice to all OWOA members, informing them of a special meeting to vote on a proposed assessment in the amount of $5,406 per unit. This assessment was to be used for "proposed renovations as the complex [was] in a state of disrepair, such that there have been leaks in the roofs and the majority of the stairs and stairwells have been deemed condemned by Town Building Inspectors." At the special meeting, the proposed assessment passed by a majority vote, an unsurprising result given that Alcurt Carrboro held more than three-quarters of the votes.

On 27 December 2012, Plaintiff filed a complaint against Defendants, alleging that the assessment was unreasonable, excessive, illegal, and unnecessary. She alleged claims for breach of fiduciary duty and breach of contract as to OWOA, and unfair and deceptive trade practices, tortious interference with contract, civil conspiracy, and punitive damages against the other defendants.

---

[3] Likewise, in her complaint, Plaintiff designates both of these entities as "hereinafter, 'Aspen[.]'"

On 6 March 2013, all defendants except OWOA moved to dismiss the claims against them pursuant to Rule 12(b)(6) of our Rules of Civil Procedure. OWOA moved to dismiss the claims against it on 4 April 2013, citing Rule 12(b)(1) and (6). Following a hearing on the motions to dismiss, the trial court entered an order on 23 April 2013 dismissing all claims against all defendants pursuant to Rule 12(b)(6). Plaintiff appeals.

*Discussion*

In her brief to this Court, filed 31 October 2013, Plaintiff explicitly declines to argue her issues on appeal as to OWOA and asks that we deem them abandoned. On 15 November 2013, OWOA filed a motion to dismiss Plaintiff's appeal with this Court. That motion was referred to this panel by order entered 26 November 2013. "All . . . issues or questions not argued by [an appellant] in h[er] brief are deemed abandoned." *State v. Brooks*, 204 N.C. App. 193, 195, 693 S.E.2d 204, 207 (2010). Accordingly, we deem Plaintiff's appeal as to OWOA abandoned and dismiss that portion of the appeal.

As for Plaintiff's appeal from the dismissal of her claims against Alcurt Carrboro, ARG, Aspen, and Nepsa (collectively, "Defendants") for unfair and deceptive trade practices, tortious

interference with contract, civil conspiracy, and punitive
damages, we dismiss those arguments as moot.

> That a court will not decide a "moot" case
> is recognized in virtually every American
> jurisdiction. In federal courts the
> mootness doctrine is grounded primarily in
> the "case or controversy" requirement of
> Article III, Section 2 of the United States
> Constitution and has been labeled
> "jurisdictional" by the United States
> Supreme Court. In state courts the
> exclusion of moot questions from
> determination is not based on a lack of
> jurisdiction but rather represents a form of
> judicial restraint.
>
> Whenever, during the course of litigation it
> develops that the relief sought has been
> granted or that the questions originally in
> controversy between the parties are no
> longer at issue, the case should be
> dismissed, for courts will not entertain or
> proceed with a cause merely to determine
> abstract propositions of law.
>
> Unlike the question of jurisdiction, the
> issue of mootness is not determined solely
> by examining facts in existence at the
> commencement of the action. *If the issues
> before a court . . . become moot at any time
> during the course of the proceedings, the
> usual response should be to dismiss the
> action.*

*In re Peoples*, 296 N.C. 109, 147-48, 250 S.E.2d 890, 912 (1978)
(citations and some internal quotation marks omitted; emphasis
added), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979).

Our careful review of Plaintiff's complaint reveals that

her claims against Defendants for unfair and deceptive trade practices and for tortious interference with contract are based upon the authorization for the allegedly illegal assessment to be levied by OWOA:

34. Pursuant to N.C. Gen. Stat. § 75-1.1 by[] Alcurt and/or Aspen unlawfully engaged in an unfair method of competition in or affecting commerce by utilizing Alcurt's voting power in Old Well *to authorize the levying of an unreasonable, excessive and illegal assessment* for their own financial gain, knowing such assessment would pose a substantial monetary burden that would otherwise not have existed on the other Condominium unit owners, including owner-investors such as Plaintiff, and that such monetary burden would likely force some unit owners into foreclosure or short sale, thereby negatively affecting the market values of all the units, causing the loss of rental income from their units and the potential eviction of their tenants or the non-renewal of their tenants' leases, and making such rental units available for purchase by Alcurt at below fair market and assessed values.

. . .

38. Alcurt and/or Aspen intentionally induced Old Well by Alcurt's replacement of the Board of Directors of Old Well and by voting for such Board of Directors *to levy an assessment* (and by Aspen's use of its officer Jeffrey Stole as the President of Old Well in carrying out such vote and assessment) unreasonably and in bad faith and not for the sole purpose of defraying the common expenses or improving the common property of the Condominium unit owners and

that is instead for the purpose of improving Alcurt's Condominium units, compensating Aspen for its services to Alcurt and paying for other non-allowable expenses in contravention of the valid contract between Old Well and Plaintiff.

39. Alcurt acted without legal justification in such inducement of Old Well to breach the Declaration of Old Well Condominium I in that as a member of Old Well Alcurt is bound by its contractual obligations to Old Well and pursuant thereto is responsible for the maintenance, repair, replacements and improvements for its own units and has no legal right in contract or otherwise to attempt to pass on through its majority interest voting power in Old Well such individual costs and expenses to the other members of Old Well.

40. Aspen acted without legal justification in such inducement of Old Well to breach the Declaration of Old Well Condominium I in that as the manager of both the Condominium and of Alcurt's units, Aspen had a legal and contractual duty to prevent a conflict of interest between Alcurt and Old Well and to keep separate the finances and business transactions of each, which duty it breached by its instrumentality *in carrying out the vote for an assessment* levied in contravention of Old Well's Bylaws by authorizing improvements made to Alcurt's units by Old Well which are actually the responsibility of Alcurt and not that of Old Well, and for purposes not within the purview of Old Well and for the primary advantage of Alcurt rather than the membership of Old Well as a whole.

(Emphasis added). Defendants argue that "Plaintiff's claims were mooted shortly after she filed her complaint" when, on 22

January 2013, the proposed assessment was withdrawn. In Plaintiff's reply brief, she acknowledges the withdrawal of the assessment. As a result, "the question[] originally in controversy between the parties[, to wit, whether the assessment was illegal, is] no longer at issue[,]" *id.*, and Plaintiff's claims for unfair and deceptive trade practices and for tortious interference with contract are moot.

As for Plaintiff's arguments regarding her claims against Defendants for civil conspiracy and punitive damages, those must also be dismissed. "It is well established that there is not a separate civil action for civil conspiracy in North Carolina." *Piraino Bros., LLC v. Atl. Fin. Group, Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (citations and internal quotation marks omitted), *disc. review denied*, 365 N.C. 357, 718 S.E.2d 391 (2011). Accordingly, in light of the mootness of her claims for unfair and deceptive trade practices and tortious interference with contract, Plaintiff cannot sustain a claim for civil conspiracy. Likewise, "[p]unitive damages may be awarded only *if the claimant proves that the defendant is liable for compensatory damages* and that one of the . . . aggravating factors was present and was related to the injury for which compensatory damages were awarded[.]" N.C. Gen. Stat. § 1D-

15(a) (2013). Here, Plaintiff is not entitled to any compensatory damages from Defendants and thus cannot sustain a claim for punitive damages.

As for Plaintiff's assertions that she also sought other relief, such as an injunction against further violations of the bylaws and specific performance in the form of a release of OWOA financial records for the year 2012, those demands were specifically directed against OWOA, not against Defendants. As noted *supra*, Plaintiff has explicitly abandoned all claims against OWOA, and the trial court's dismissal of those claims stands. For the reasons stated herein, Plaintiff's appeal is

DISMISSED.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).