Morris Int'l, Inc. v. Packer, 2020 NCBC 75.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 20 CVS 2156 |

MORRIS INTERNATIONAL, INC.,

        Plaintiff,

v.

ANTHONY WILLIAM PACKER;
PACKER INVESTMENT
COMPANY, INC.; PA&K, LLC;
OLDE BEAU GENERAL
PARTNERSHIP; KPP, LLC;
KENNINGTON INVESTMENT
COMPANY, INC.; BARRY POOLE;
LAURA POOLE; SHERRI
KENNINGTON FAGAN; KRISTI
KENNINGTON HALL; and KATHY
KENNINGTON DAVIS,

        Defendants.

**ORDER AND OPINION ON BARRY POOLE'S MOTION TO DISMISS AND LAURA POOLE'S AMENDED MOTION TO DISMISS AND MOTION FOR ATTORNEYS' FEES**

THIS MATTER comes before the Court on Defendant Barry Poole's Motion to Dismiss Pursuant to Rule 12(b)(6) ("Barry Poole's Motion," ECF No. 19) and Defendant Laura Poole's Amended Motion to Dismiss ("Motion to Dismiss") and Motion for Attorney's Fees Pursuant to N.C.G.S. §§ 6-21.5, 75-16.1, and Motion for Rule 11 Sanctions ("Motion for Attorneys' Fees") (ECF No. 21)[1] (collectively, Barry Poole's Motion, the Motion to Dismiss, and Motion for Attorneys' Fees are "the Motions.").

---

[1] Laura Poole filed a motion for attorney's fees and motion for sanctions within the same document as her Motion to Dismiss. At the hearing, the Court advised Laura Poole's counsel that it intended to grant her Motion for Attorneys' Fees and asked counsel to submit an appropriately documented request. The Court will address the amount of fees and costs awarded to Laura Poole by separate order.

THE COURT, having considered the Motions, the briefs filed in support of and in opposition to the Motions, the arguments of counsel at the hearing on the Motions, the applicable law, and other appropriate matters of record, CONCLUDES that the Motions should be GRANTED for the reasons set forth below.

*Morris Law Firm, PLLC, by Bradley C. Morris, for Plaintiff Morris International, Inc.*

*Jerry Meek, Attorney at Law, PLLC, by Gerald F. Meek, for Defendants Barry Poole and Laura Poole.*

*James, McElroy & Diehl, P.A., by Fred B. Monroe, for Defendants Sherri Kennington Fagan, Kristi Kennington Hall, Kathy Kennington Davis, and Kennington Investment Company, Inc.*

*Vann Law Firm, P.A., by Christopher M. Vann, for Defendants Anthony William Packer, Packer Investment Company, Inc., PA&K, LLC, Olde Beau General Partnership, and KPP, LLC.*

McGuire, Judge.

I.    FACTS

1.    The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the complaint that are relevant to the Court's determination of the Motions.  *See, e.g.*, *Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  The facts relevant to the determination of the Motions are drawn from the Amended Complaint. ("Amended Complaint," ECF No. 4.)

2.    This matter arises from the development of property in the Olde Beau Subdivision in Alleghany County, North Carolina.  The Olde Beau Golf and Country Club is part of the Olde Beau Subdivision.  Defendant Olde Beau General Partnership

("OBGP") owned the Olde Beau Subdivision. (*Id*. at ¶ 4.) The General Partners in OBGP are Defendants Packer Investment Company, Inc. ("PIC") and Kennington Investment Company, Inc. ("KIC"). Defendant Anthony William Packer ("Packer") is the President of PIC. (*Id*. at ¶¶ 5–6.)

3.     Packer is also a member of PA&K, LLC ("PA&K"). PA&K is in the business of developing residential properties and was involved in developing, managing, constructing, and selling property in the Olde Beau Subdivision. (*Id*. at ¶ 3.)

4.     Plaintiff Morris International, Inc. ("Plaintiff") specializes in the development and marketing of real estate. (*Id*. at ¶ 1.) Sid Morris ("Morris") is a "representative" of Plaintiff, but his specific role with Plaintiff is not alleged. (*Id*. at ¶ 17.)

5.     On May 20, 2015, Plaintiff, PA&K, and OBGP executed an "Agreement with PA&K, LLC and Morris International, Inc. Olde Beau Golf and Country Club Development Project." ("Agreement," *Id*. at ¶ 18.) The Agreement "contemplated creating a luxury RV resort wherein a portion of the Olde Beau Subdivision would be developed for sales of individual lots to be owned and used by owners of luxury motorhome coaches, with improvements, appropriate amenities, and golf club membership." (*Id*. at ¶¶ 14 and 18, Ex. B at pp. 3–4.)[2] The Agreement was signed on behalf of PA&K by Packer, and on behalf of Plaintiff by Morris. (*Id*.) Although not mentioned in or a signatory to the Agreement, Plaintiff alleges that OBGP was

---

[2] In the Amended Complaint, Plaintiff misidentifies the Agreement as Exhibit A.

also a party to the Joint Venture.[3]  On September 15, 2015, PA&K and Plaintiff signed an addendum to the Agreement.  (*Id*. at pp. 4–6.)  The parties referred to the project as the "Olde Beau Joint Venture."  (hereinafter "Joint Venture").

6.      Defendant Barry Poole is involved in developing, marketing, and selling real estate as recreational vehicle ("RV") resort properties.  (*Id*. at ¶ 8.)  Plaintiff alleges that:

> During the active phase of the [Joint Venture], [Barry Poole] [was] directly and personally involved with [Plaintiff], PA&K[,] and OBGP in negotiations of an agreement for [Barry Poole] to serve, under contract to the [Joint Venture], as the construction manager of the RV resort at Olde Beau. These negotiations included discussions of confidentiality and non-competition of [Barry Poole] relating to other RV resorts that he was involved with at the time. Thus, [Barry Poole] had actual, detailed knowledge of the plans and opportunities that the Joint Venture was pursuing, and specifically of [Plaintiff]'s interest in the venture.

(*Id*. at ¶ 38.)

7.      Plaintiff only alleges that the Joint Venture was negotiated with Barry Poole, but not that the parties entered into any type of contract or that Barry Poole was hired as the construction manager for the Joint Venture.

8.      In January 2016, faced with an organized group of Olde Beau community members opposing the project, Packer and Morris agreed to "hold off on further development until the threat of legal action was resolved."  (*Id*. at ¶¶ 28–31.)

---

[3] Plaintiff alleges that "Packer, as President of PIC, a general partner in OBGP, and on behalf of OBGP, entered into this agreement and committed the real estate to the Olde Beau Joint Venture and to the JV Agreement with the knowledge and authority of OBGP and all its other partners."  (ECF No. 4, at ¶ 21.)

Packer also stated that he "likely would put the property up for auction." (*Id*. at ¶ 31.)

9. By the end of August 2016, Plaintiff "believe[d] and understood that the RV project and other objectives of the [Joint Venture] would not proceed, and that Packer, PA&K, and OBGP would pursue other opportunities to develop or sell components of the Olde Beau property." (ECF No. 4, at ¶¶ 34–35.)

10. Unbeknownst to Plaintiff, in July 2017, Packer and Barry Poole formed Defendant KPP, LLC ("KPP"), a North Carolina limited liability company, to act as the developer of the RV resort project that had been the subject of the Joint Venture (the "New Venture"). (*Id*. at ¶ 37.)

11. In November 2017, Morris learned that Packer and Barry Poole were developing of the RV resort project. Morris visited the property and saw that excavation and other land improvements were underway in accordance with the design that Plaintiff had prepared for the Joint Venture. (*Id*. at ¶ 36.)

12. The sole allegation regarding Laura Poole contained in the Amended Complaint is that she "is an individual residing in Alleghany County, North Carolina" and "is a licensed real estate broker involved in marketing and selling RV resort properties, including the real property involved in this lawsuit." (ECF No. 4, at ¶ 9.) Plaintiff does not allege when Laura Poole was involved in marketing and selling the property and does not make any allegations of specific conduct by Laura Poole.

## II. PROCEDURAL BACKGROUND

13. On January 30, 2020, Plaintiff filed the Complaint in this matter (ECF No. 3), and on March 2, 2020, Plaintiff filed the Amended Complaint. (ECF No. 4.) On March 3, 2020, this case was designated as a mandatory complex business case and assigned to the undersigned. (Designation Order, ECF No. 1; Assignment Order, ECF No. 2.)

14. In the Amended Complaint, Plaintiff alleges claims against PA&K and OBGP for: breach of contract (Count I); breach of fiduciary duties (Count II); and dissolution and accounting (Count VIII). Plaintiff alleges a claim for a constructive trust against PA&K, KPP, OBGP, PIC, and Defendant Kennington Investment Company, Inc. ("KIC") (Count III); a claim against OBGP and KPP for an equitable lien (Count IX); and a claim for tortious interference with a business contract and relationship against Barry Poole, Laura Poole, Defendant Sherri Kennington Fagan, Defendant Kristi Kennington Hall, Defendant Kathy Kennington Davis, KPP, KIC, and PIC (Count VI). Plaintiff alleges claims against all Defendants for: "misappropriation/conversion" (Count IV); violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 ("UDTPA") (Count V); and civil conspiracy (Count VII).

15. On March 30, 2020, Barry Poole filed Barry Poole's Motion and Laura Poole filed the Motion to Dismiss, and the Motion for Attorneys' Fees. On the same date, Barry Poole filed a Brief in Support of Barry Poole's Motion, (B. Poole Br. Supp. Mot., ECF No. 20), and Laura Poole filed a Brief in Support of the Motion to Dismiss

and the Motion for Attorneys' Fees. (L. Poole Br. Supp., ECF No. 23). On June 1, 2020, Plaintiff filed its Brief in Opposition to Defendants' Respective Motions to Dismiss (ECF No. 37), and on June 10, 2020, Barry Poole and Laura Poole filed replies. (ECF Nos. 38, 39).

16. On July 16, 2020, the Court held a hearing on the Motions, which are now ripe for resolution.

III. ANALYSIS

A. **Standard of Review**

17. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Our appellate courts frequently reaffirm that North Carolina is a notice pleading state. *See, e.g., Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) ("Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought.") (quoting *Wake Cty. v. Hotels.com, L.P.*, 235 N.C. App. 633, 647, 762 S.E.2d 477, 486 (2014)).

18. "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good

claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

19.     In ruling on a 12(b)(6) motion, the court construes the complaint liberally and accepts all allegations as true. *See Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).  However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation omitted).

20.     In addition, "when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

## B.     Barry Poole's Motion

21.     Plaintiff makes the following claims against Barry Poole: misappropriation/conversion, unfair and deceptive trade practices, tortious interference with a business contract and relationship, and civil conspiracy.  Barry Poole seeks dismissal of these claims on the grounds that the allegations of the Amended Complaint fail to state any claim against him.  (ECF No. 19, at p. 1.)

*i.    Misappropriation/Conversion*

22.    Plaintiff alleges that:

> "[t]he [Joint Venture] had substantial assets that were contributed by [Plaintiff] in the form of intellectual property, marketing strategy and plans, site planning, slope analysis, zoning approval and other valuable and material components of a viable venture . . . In violation of [Plaintiff]'s rights and without its knowledge, participation or consent, the Defendants joined forces to wrongfully appropriate these assets to their own benefit, and to the detriment of [Plaintiff] and the [Joint Venture]."

(ECF No. 4, at ¶¶ 75–76.)

23.    Plaintiff does not allege any specific conduct by Barry Poole in support of the conversion claim.

24.    Preliminarily, Barry Poole argues that to the extent Plaintiff, by titling its claim "Conversion/Misappropriation," purports to make a claim for misappropriation of trade secrets in violation of the North Carolina Trade Secrets Protection Act ("NCTSPA"), N.C. G. S. § 66-152 et seq., the Amended Complaint fails to allege the necessary elements.  (ECF No. 20, at pp. 4–5.)   However, Plaintiff concedes that it is not attempting to state a NCTSPA claim against Defendants,  (ECF No. 37, at p. 15), and, therefore, any claim for violation of the NCTSPA is DISMISSED.

25.    Under North Carolina law, conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523,

723 S.E.2d 744, 747 (2012) (citation omitted). There are two elements in a claim for conversion: (1) the plaintiff's ownership, and (2) the defendant's wrongful possession. *Id.*

26.     In seeking dismissal of the claim for conversion, Barry Poole contends, *inter alia*, that "Plaintiff has failed to allege ownership of the . . . converted property," and instead alleges that the property was owned by the Joint Venture. (ECF No. 20, at pp. 7–8.).

27.     A joint venture is a type of partnership and therefore governed by partnership law, as codified in the Uniform Partnership Act. *See Jones v. Shoji*, 336 N.C. 581, 585, 444 S.E.2d 203, 205 (1994); *see also* N.C. Gen. Stat. § 59-36 (defining a partnership as "an association of two or more persons to carry on as co-owners a business for profit"). By statute, any property that the Plaintiff "originally brought into the partnership stock" or that was "subsequently acquired by purchase or otherwise, on account of the partnership, is partnership property." N.C. Gen. Stat. § 59-38. Since the property that was allegedly converted was partnership property, only the partnership–not the individual partners–can assert the claim for conversion. *Ron Medlin Constr. v. Harris*, 364 N.C. 577, 704 S.E.2d 486 (2010) ("[W]hen property is owned by a partnership, the partnership is the real party in interest for purposes of pursuing a civil action pertaining to the partnership property"); *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC LEXIS 7, at *27 (N.C. Super. Ct. Jan. 18, 2012) (same). Plaintiff alleges it contributed the converted property to the Joint Venture and, therefore the property belonged to the Joint Venture. (ECF No. 4, at ¶ 75.)

28. In response to Barry Poole's argument, Plaintiff does not dispute that the property at issue was owned by the Joint Venture and not by Plaintiff. Rather, Plaintiff contends that it has a right to sue in its individual capacity because it was owed a "special duty" and suffered a "separate and distinct injury." (ECF No. 37, at p. 16.) In *Gaskin v. J.S. Procter Co., LLC*, the Court of Appeals held:

> The general rule of partner standing to sue individually is stated in *Energy Investors* [*Fund, L.P. v. Metric Constructors, Inc.*]: "It is settled law in this State that one partner may not sue in his own name, and for his benefit, upon a cause of action in favor of a partnership." 351 N.C. [331], at 336-37, 525 S.E.2d [441] at 445 (2000) (citation and quotation marks omitted). The rule includes a cause of action against other partners in the partnership, *Jackson v. Marshall,* 140 N.C. App. 504, 508, 537 S.E.2d 232, 235 (2000), *disc. review denied,* 353 N.C. 375, 547 S.E.2d 10 (2001), as well as a cause of action against an unrelated third party, *Energy Investors,* 351 N.C. at 336-37, 525 S.E.2d at 445. "The *only two* exceptions to this rule are: (1) a plaintiff alleges an injury 'separate and distinct' to himself, or (2) the injuries arise out of a 'special duty' running from the alleged wrongdoer to the plaintiff." 351 N.C. at 335, 525 S.E.2d at 444 (emphasis added) (recognizing the two exceptions in a suit brought by a limited partner and citing *Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 660, 488 S.E.2d 215, 220 (1997), which recognized the same two exceptions in a suit brought by shareholders in a corporation).

196 N.C. App. 447, 451, 675 S.E.2d 115, 117-118 (2009).

29. While Plaintiff contends that the other alleged partners to the Joint Venture, PA&K and OBGP, owed Plaintiff fiduciary duties, it does not allege or contend that Barry Poole owed Plaintiff any duty. *See Energy Investors*, 351 N.C. at 335, 525 S.E.2d at 444 (stating plaintiff must allege a special duty "running from the *alleged wrongdoer* to the plaintiff") (emphasis added).

30.     Similarly, while Plaintiff claims it has suffered a "separate and distinct" injury from the Joint Venture and from PA&K and OBGP, it does not point the Court to any facts alleged in the Complaint supporting this claim. In fact, it is hard to imagine how Barry Poole's alleged conversion of the Joint Venture's "intellectual property, marketing strategy and plans, site planning, slope analysis, zoning approval, and other valuable and material components of a viable venture" would not equally harm the other partners. To the extent Plaintiff is attempting to argue that because Packer is a member of the new entity currently developing the property, (KPP), he personally benefits from the alleged conversion and, therefore, was not harmed in the same way as Plaintiff, that does not establish that Plaintiff's injury is distinct from the injury suffered by PA&K and OBGP.

31.     Therefore, to the extent Barry Poole's Motion seeks dismissal of the claim for misappropriation/conversion, the motion should be GRANTED.

*ii.     Tortious Interference with Contract*

32.     In its claim for tortious interference with contract, Plaintiff again makes no specific allegations regarding Barry Poole or his conduct but instead pleads that "[w]ith wrongful intent to induce PA&K and OBGP to breach their joint venture agreement and partnership with [Plaintiff], the Defendants, and each of them, interfered in the relationship and induced PA&K and OBGP to breach the Agreement to the harm of [Plaintiff], and the [Joint Venture]." (ECF No. 4, at ¶ 93.) Plaintiff further alleges that Defendants' conduct was "willful, malicious and wanton." (*Id*. at ¶ 94.)

33. To establish a claim for tortious interference with contract, a plaintiff must show: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954)).

34. Barry Poole argues that the claim for tortious interference should be dismissed for several reasons, including Plaintiff's failure to allege that Barry Poole acted without justification in interfering with the Agreement. (ECF No. 20, at pp. 10–11.) The North Carolina Supreme Court has held that if the defendant's interference is "for a legitimate business purpose, his actions are privileged. Competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988). However, the "privilege [to interfere] is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the defendant which is involved." *Id.* "If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified." *Id.*

35. The malice required to overcome a justification of business competition is legal malice, and not actual malice. *Childress*, 240 N.C. at 675, 84 S.E.2d at 182 ("It is not necessary, however, to allege and prove actual malice in the sense of personal hatred, ill will, or spite in order to make out a case for the recovery of compensatory damages against the outsider for tortiously inducing the breach of the third person's contract with the plaintiff. The term 'malice' is used in this connection in its legal sense, and denotes the intentional doing of the harmful act without legal justification."); *Murphy v. McIntyre*, 69 N.C. App. 323, 328-29, 317 S.E.2d 397, 401 (1984) (noting that legal malice "means intentionally doing a wrongful act or exceeding one's legal right or authority in order to prevent the making of a contract between two parties" and the act "must be taken with the design of injuring one of the parties to the contract or of gaining some advantage at the expense of a party").

36. The Court of Appeals has held that in order to survive dismissal, a complaint alleging tortious interference "must admit of no motive for interference other than malice." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605, 646 S.E.2d 826, 832-33 (2007); *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001) ("[W]e have held that the complaint must admit of no motive for interference other than malice"); *Sides v. Duke Hospital*, 74 N.C. App. 331, 346, 328 S.E.2d 818, 829 (1985) ("[T]he complaint in an action for malicious interference with contract must clearly allege that the actions of the defendant were the cause of the plaintiff's damages and that the complaint admits of no other motive for those actions than malice.").

37. Barry Poole argues that not only does Plaintiff fail to allege facts showing that Barry Poole acted without justification, the Amended Complaint contains allegations establishing that Barry Poole had a legitimate business interest in participating in the New Venture. (ECF No. 20, at pp. 9–10.) Plaintiff alleges that Barry Poole was in the business of developing "RV resort properties" and that the partners had negotiated with him about acting as the construction manager for the Joint Venture project (but apparently did not reach an agreement for his services). (*Id.*) Accordingly, the Amended Complaint alleges that Barry Poole had a legitimate business interest in the New Venture and a motive other than malice for interfering with the Agreement. (*Id.*)

38. In response, Plaintiff contends that it sufficiently pleads lack of justification by alleging that Barry Poole knew about the Joint Venture and that he "succeeded to an equity position in the [N]ew [V]enture as a result of the breach of the . . . Agreement by PA&K and OBGP," which was "achievable only as a result of actively urging the violation of [Plaintiff]'s rights." (ECF No. 37, at p. 19.)

39. The Amended Complaint, however, contains only the conclusory allegation that the Defendants, including Barry Poole, "induce[d]" PA&K and OBGP to breach, and "interfered" with, the Agreement. (ECF No. 4, at ¶93.) It does not allege facts as to the nature of any conduct by Barry Poole that would have induced PA&K and OBGP, or how Barry Poole interfered with the Agreement. Plaintiff does not expressly allege that Defendants or Barry Poole lacked a justification for the interference, but only that such interference was "willful, malicious, and wanton."

(*Id*. at ¶ 94.) Again, Plaintiff does not allege in what way Defendants', or Barry Poole's, conduct was malicious. In the absence of "specific, supportive, factual allegations, the [C]ourt need not accept as true general conclusory allegations of the elements of a cause of action for purposes of a motion to dismiss." *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, *43-44 (N.C. Super. Ct. Oct. 21, 2016) (quoting *Global Promotions Grp., Inc. v. Danas, Inc.*, 2012 NCBC LEXIS 40, at *12 (N.C. Super. Ct. June 22, 2012); s*ee also Livingston v. Bakewell*, No. COA13-748, 232 N.C. App. 337, 757 S.E.2d 525, 2014 N.C. App. LEXIS 141, at *15 (N.C. Ct. App. 2014) (unpublished) ("By not providing some factual foundation for these conclusory allegations, plaintiff's complaint, on its face, is insufficient to defeat defendants' motion to dismiss.").

40.     Plaintiff has not alleged any facts explaining what Barry Poole did to induce PA&K or OBGP to breach the Agreement or facts supporting the assertion that his conduct was without justification or malicious. Therefore, to the extent Barry Poole's Motion seeks dismissal of the claim for tortious interference with the Agreement, the motion should be GRANTED.

*iii.     UDTPA*

41.     Plaintiff alleges that Defendants committed an unfair or deceptive act by "concealing" the New Venture and "excluding" Plaintiff from participation in the New Venture. (ECF No. 4, at ¶ 83.) Plaintiff further alleges that "PA&K's and OBGP's conduct constitutes breach of fiduciary duties and constructive fraud which supports" the UDTPA claim, but does not allege how Barry Poole engaged in any

unfair or deceptive act other than claiming that Defendants knew about Plaintiff's previous involvement in the Joint Venture and acted in "their own selfish interests." (*Id*. at ¶¶ 84–87.)

42. The law regarding the elements of a cognizable claim for violation of the UDTPA is well established. *See e.g. Kane v. Moore*, 2018 NCBC LEXIS 184, *10-13 (N.C. Super. Ct. Dec. 4, 2018). Whether an act "constitute[s] an unfair or deceptive trade practice" is a question of law for the court. *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 501 (2004).

43. Barry Poole argues that Plaintiff's failure to allege that Barry Poole had any duty to disclose the New Venture to Plaintiff causes Plaintiff's claim of unfair or deceptive conduct to fail. (ECF No. 20, at pp. 11–12.) Generally, a duty to disclose arises (a) when the parties have a fiduciary relationship, (b) where a party to an arms-length transaction "has taken affirmative steps to conceal material facts from the other," or (c) where a party knows of a "latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton v. Harton*, 81 N.C. App. 295, 297-98, 344 S.E.2d 117 (1986); *see also Friedland v. Gales*, 131 N.C. App. 802, 807, 509 S.E.2d 793 (1998).

44. Plaintiff does not allege that Barry Poole owed a fiduciary duty or any other type of legal duty to Plaintiff, nor that Barry Poole engaged with Plaintiff in any negotiations involving the New Venture that might impose an obligation for him to disclose facts to Plaintiff. Instead, Plaintiff asserts that it has pleaded a claim for

violation of the UDTPA against Barry Poole because Defendants "knew or should have known that the New Venture was being concealed from [Plaintiff]. Each of the Defendants nevertheless pursued their [sic] own respective selfish interests in the new venture to the exclusion of and in violation of [Plaintiff]'s rights." (ECF No. 37, at pp. 17–18.)

45. Plaintiff's argument is frivolous. There are no facts alleged in the Amended Complaint that would support a claim that Barry Poole had an obligation to disclose the New Venture to Plaintiff, or that Barry Poole engaged in any conduct towards Plaintiff that violated the UDPTA. Accordingly, to the extent Barry Poole's Motion seeks dismissal of the claim for violation of the UDTPA, the motion should be GRANTED.

*iv. Civil Conspiracy*

46. "There is no independent cause of action for civil conspiracy. Only when there is an underlying claim for unlawful conduct can a plaintiff state a claim for civil conspiracy by also alleging the agreement of two or more parties to carry out the conduct and injury resulting from the agreement." *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 92 (2002). "The charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one might be admissible against all." *Shope v. Boyer*, 268 N.C. 401, 405, 150 S.E.2d 771, 774 (1966); *see also GoRhinoGo, LLC v. Lewis*, 2011 NCBC LEXIS 39, at *20 (N.C. Super. Ct. Sept. 9, 2011) ("Having joined the conspiracy, [two individual defendants] became

exposed to liability with [co-defendant] and any other co-conspirators for damages caused by any act in furtherance of the common scheme.").

47.   To plead a claim for civil conspiracy, a plaintiff must allege: "(1) An agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333 (2011).

48.   With regard to the claim for civil conspiracy, Plaintiff alleges the following:

> 97. The Defendants all entered an agreement to pursue the [New Venture], with knowledge that their actions were unlawful as relating to [Plaintiff] and its interest in the [Joint Venture].
>
> 98. Each of the Defendants willfully and wantonly participated in pursuit of the goal of their agreement.
>
> 99. Each of the Defendants, acting in concert with the others, caused damage to [Plaintiff].

(ECF No. 4, at ¶¶ 97–99.)

49.   Barry Poole argues that "[b]ecause dismissal is proper as to the Plaintiff's other claims against Barry Poole, it should also be granted as to the ancillary claim of civil conspiracy," citing *Piraino Bros., LLC*, 211 N.C. App. at 350, 712 S.E.2d at 334 in support.   (ECF No. 20, at p. 13.) Barry Poole's argument is incorrect.   In *Piraino Bros.*, the underlying tort claim had been dismissed by the Court.   *Id.* at 350, 712 S.E.2d at 333-334.   Therefore, there was no underlying claim of wrongful conduct on which the civil conspiracy claim could be sustained. *Id.*

50.     In this case, while the Court is dismissing the tort claims against Barry Poole, there remain unresolved claims of tortious conduct against the other Defendants. In *Chisum v. MacDonald*, this Court held:

> Hardison argues that Plaintiff cannot maintain a claim for civil conspiracy because the other claims against Hardison fail . . . Hardison's . . . argument is incorrect. The dismissal of the claims against Hardison for breach of fiduciary duty and professional negligence does not bar him from liability for damages resulting from the other conspirators' acts.

2018 NCBC LEXIS 34, *32 (N.C. Super. Ct. April 18, 2018)

51.     Nevertheless, as with the other claims Plaintiff has brought against Barry Poole, the Amended Complaint does not contain any factual allegations involving him that support the conclusory allegations of civil conspiracy. Even if Plaintiff has sufficiently alleged tort claims against other Defendants, the allegations do not suggest how Barry Poole was involved in an agreement to commit any wrongful conduct. Thus, the Court concludes that the allegations fail to state a cause of action for civil conspiracy against Barry Poole. *See Bottom v. Bailey*, 238 N.C. App. 202, 213, 767 S.E.2d 883, 890 (2014) (affirming dismissal of claim for civil conspiracy holding that while "[t]he claim suggests that defendants . . . conspired, [it] fails to allege how this conspiracy came to be, or when, or where, or why. The complaint asserts mere conclusions concerning the elements of civil conspiracy, without offering a scintilla of factual allegation in support of the claim.").

52.     Therefore, to the extent Barry Poole's Motion seeks dismissal of the claim for civil conspiracy, the motion should be GRANTED.

### C. Laura Poole's Motions

53.    The only allegations regarding Laura Poole in the Amended Complaint are that she "is an individual residing in Alleghany County, North Carolina" and "is a licensed real estate broker involved in marketing and selling RV resort properties, including the real property involved in this lawsuit." (ECF No. 4, at ¶ 9.)  Although the Amended Complaint makes certain allegations against unspecified Defendants and purports to make claims against Laura Poole for conversion, (*Id.* at ¶¶ 73–79), unfair and deceptive trade practices,  (*Id.* at ¶¶ 80-90), "tortious interference with a business contract and relationship" (*Id.* at ¶¶ 91-95), and civil conspiracy (*Id.* at ¶¶ 96-100),  Plaintiff does not allege that Laura Poole engaged in any specific conduct or took any action.  Laura Poole moves for dismissal on the grounds that the Amended Complaint fails to allege any claims against her.  She also contends that she is entitled to an award of attorney's fees pursuant to N.C.G.S. §§ 6-21.5 and 75-16.1 and/or for an award of sanctions (including the reasonable expenses incurred by her because of the filing of this claim) pursuant to Rule 11.  (ECF No. 22, at pp. 1–2.)

54.    Plaintiff's only response to Laura Poole's contentions is its claim that it possesses facts suggesting that she "participated in meetings with the partners in the [Joint Venture] where the concepts and ideas for the Luxury RV Resort were discussed," and that she is listed on an internet website for the New Venture as the contact person for interested parties and prospective purchasers.  (ECF No. 37, pp. 22–23.)  Even if these facts were somehow sufficient to bolster Plaintiff's allegations regarding Laura Poole, they are not alleged in the Amended Complaint.  Finally, Plaintiff admits that it named Laura Poole as a Defendant in this lawsuit despite the

fact that it "has no further specific information of [Laura] Poole's actual conduct in this matter." (*Id.* at p. 23.)

### i. *Motion to Dismiss*

55. In the Amended Complaint, Plaintiff names Laura Poole as a Defendant in this action and makes claims against her for conversion, violation of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), tortious interference with contract, and civil conspiracy.

56. With regard to the claim for conversion, Plaintiff alleges that the "Joint Venture" owned "substantial assets" "in the form of intellectual property, marketing strategy and plans, site planning, slope analysis, zoning approval and other valuable and material components of a viable venture," and that "Defendants joined forces to wrongfully appropriate these assets to their own benefit." (ECF No. 4, at ¶ 75).

57. North Carolina law on conversion is set out above in the discussion of Barry Poole's Motion. Plaintiff does not allege facts suggesting how Laura Poole could conceivably be liable for conversion. "On a motion to dismiss under Rule 12(b)(6), the court is not . . . required to accept mere conclusory allegations, unwarranted deductions of fact, or unreasonable inferences as true." *Estate of Vaughn v. Pike Elec., LLC*, 230 N.C. App. 485, 493, 751 S.E.2d 227, 233 (2013); s*ee also Global Promotions Grp., Inc.*, 2012 NCBC LEXIS 40, at *12 ("Absent specific, supportive, factual allegations, the court need not accept as true general conclusory allegations of the elements of a cause of action for purposes of a motion to dismiss"). The claim for conversion against Laura Poole should be dismissed.

58.     Regarding the claim for tortious interference, the Amended Complaint makes the conclusory allegation that "the Defendants, and each of them, interfered in the relationship and induced PA&K and OBGP to breach the Agreement to the harm of MI." (ECF No. 4, at ¶ 93.)  As previously stated, to plead a claim for tortious interference with contract, a plaintiff must allege that: (1) a valid contract existed between the plaintiff and a third party that conferred upon plaintiff contractual rights against the third party; (2) the defendant was aware of the contract; (3) the defendant intentionally induced the third party not to comply with the contract; (4) the defendant did so without justification; and (5) actual injury to plaintiff resulted. *United Labs., Inc.*, 322 N.C. at 661, 370 S.E.2d at 387.  This Court has interpreted "induce" to mean "purposeful conduct," "active persuasion, request, or petition." *KRG New Hill Place, LLC v. Springs Inv'rs, LLC*, 2015 NCBC LEXIS 20, at *14, 15 (N.C. Super. Ct. Feb. 27, 2015) (quoting *Inland Am. Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 354, 712 S.E.2d 366, 369-70 (2011)); *Southeast Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, *28-29 (N.C. Super. Ct. Aug. 20, 2019); *Charah, LLC v. Sequoia Servs. LLC*, 2019 NCBC LEXIS 18, *18 (N.C. Super. Ct. March 11, 2019).

59.     The Amended Complaint does not allege any facts about how Laura Poole engaged in "purposeful conduct," or "active persuasion, request, or petition," or in any other way induced, or attempted to induce, PA&K and OBGP to breach the Agreement. The claim against Laura Poole for tortious interference should be dismissed.

60. The same holds true for the claim for unfair and deceptive trade practices. Again, Plaintiff alleges that unspecified Defendants were "actually aware of [Plaintiff]'s interest in the [Joint Venture] and its previous efforts in pursuit of the RV resort" but "conceal[ed] their actions" in pursuing the project from Plaintiff, and "readily participated in pursuing the RV resort in violation of [Plaintiff]'s rights and interests." (ECF No. 4, at ¶¶ 83–85.) However, Plaintiff does not allege that Laura Poole owed any duty to Plaintiff to refrain from acting as the real estate broker for the project, that she had any duty to disclose her involvement to Plaintiff, or how she "concealed" any information from Plaintiff. There simply is no basis for alleging that Laura Poole engaged in an unfair trade practice in violation of the UDTPA. Thus, this claim against Laura Poole also fails.

61. Finally, Plaintiff's conclusory allegations in support of the claim for civil conspiracy do not allege any facts that would implicate Laura Poole in any unlawful misconduct, and the civil conspiracy claim against Laura Poole should be dismissed.

62. Therefore, the Motion to Dismiss should be GRANTED.

*ii. Motion for Attorney's Fees*

63. Laura Poole contends that she is entitled to an award of attorney's fees pursuant to N.C.G.S. §§ 6-21.5 and 75-16.1 and/or for an award of sanctions (including the reasonable expenses incurred by her because of the filing of this claim) pursuant to Rule 11. Since the Court concludes that an award of attorneys' fees under N.C.G.S. § 6-21.5 is warranted, it does not consider Laura Poole's requests under N.C.G.S. § 77-16.1 or under Rule 11, and those motions are therefore DENIED.

64. N.C. Gen. Stat. § 6-21.5 provides, in relevant part,

> In any civil action, . . . , the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.

N.C. Gen. Stat. § 6-21.5.

65. A justiciable issue is one that is "real and present, as opposed to imagined or fanciful." *Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 257, 400 S.E.2d 435, 437 (1991) (citations omitted). "In order to find a complete absence of a justiciable issue it must conclusively appear that such issues are absent even giving the pleadings the indulgent treatment they receive on motions for summary judgment or to dismiss." *K & K Development Corp. v. Columbia Banking Fed. Savings & Loan*, 96 N.C. App. 474, 479, 386 S.E.2d 226, 229 (1989) (citations omitted). The presence or absence of justiciable issues in the pleadings is a question of law. *Wayne St. Mobile Home Park, LLC v. N. Brunswick Sanitary Dist.*, 213 N.C. App. 554, 561, 713 S.E.2d 748, 753 (2011).

66. The Court has reviewed the Amended Complaint and, based on the discussion regarding the Motion to Dismiss above, concludes that Plaintiff wholly fails to state anything resembling a cognizable cause of action against Laura Poole. Plaintiff has failed to allege any facts regarding Laura Poole's involvement in the events underlying this lawsuit which would give rise to a claim against her. In addition, Plaintiff admits that it lacked specific information about Laura Poole's involvement beyond the fact that she participated in unspecified meetings regarding,

and served as the broker for, the New Venture but sued her nonetheless.  (ECF No. 37, at p. 23.)  Therefore, there is a complete absence of a justiciable issue as to Laura Poole, warranting an award of a reasonable attorney's fee to her, and to the extent the Motion for Attorneys' Fees seeks an award of attorney's fees and costs against Plaintiff under N.C.G.S. § 6-21.5, the motion should be GRANTED.  The Court will address the amount of fees and costs by separate order.

THEREFORE, IT IS ORDERED that:

1. Barry Poole's Motion is GRANTED.

2. Laura Poole's Motion to Dismiss is GRANTED.

3. Laura Poole's for Attorneys' Fees is GRANTED.


SO ORDERED, this the 15th day of October, 2020.


/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Cases