IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-10

Filed 17 December 2024

Pender County, No. 21 CVS 844

ADAM SAAD, Plaintiff,

v.

TOWN OF SURF CITY, Defendant.

Appeal by plaintiff from order entered 3 July 2023 by Judge R. Kent Harrell in Pender County Superior Court. Heard in the Court of Appeals 25 September 2024.

> *Everett Gaskins Hancock Tuttle Hash LLP, by Jason N. Tuttle and Michael J. Byrne, for plaintiff-appellant.*
>
> *Crossley, McIntosh, Collier, Hanley & Edes, PLLC, by Norwood P. Blanchard, III, and Clay A. Collier for defendant-appellee.*

DILLON, Chief Judge.

Plaintiff Adam Saad brought this action alleging he suffered damages when he wrecked his electric scooter while traveling over an area of the bicycle lane of a public roadway, said area being temporarily unpaved due to recent work performed by Defendant Town of Surf City. Mr. Saad appeals the trial court's grant of the Town's summary judgment motion on his claims for negligence and gross negligence.

## I. Standard of Review

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Cullen v. Logan Devs., Inc.*, 386 N.C. 373, 377 (2024) (quoting N.C.G.S. § 1A-1, Rule 56(c)). We review an appeal from summary judgment *de novo*. *Value Health Sols., Inc., v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 267 (2023). "In review of the motion for summary judgment, [we] must view the evidence in the light most favorable to the non-moving party." *Id.* Accordingly, we review the forecasted evidence in the light most favorable to Mr. Saad, as the non-moving party.

## II. Background

The forecasted evidence in the record at the summary judgment hearing, when viewed in the light most favorable to Mr. Saad, shows as follows:

In July 2019, a utilities company (hired by the Town) excavated a section of pavement, including the bicycle lane, on State Highway 210 to install sewer access for a house under construction in the Town. A few days later, Town employees excavated the same area to install a water line for the house under construction. When they completed their installation, the Town employees backfilled the excavation site with dirt and stone.

At approximately 10:45 pm on 27 July 2019, Mr. Saad was riding an electric scooter in the bicycle lane when his scooter struck the backfilled site, launching him forward into the ground and causing serious injuries. He was riding at "full throttle," where the specifications for that vehicle show a maximum speed of fifteen-and-a-half miles per hour.

It is undisputed that the backfilled site had not yet been repaved at the time of Mr. Saad's accident.

According to Mr. Saad's complaint, the backfilled site was entirely unmarked and uncovered. That is, there were no cones, barricades, signs or lights to warn cyclists of the unpaved backfilled site at the time of Mr. Saad's accident.

The backfilled site was, at most, "a couple of" inches below the surrounding asphalt surface.[1]

Mr. Saad filed his complaint against the Town, alleging (1) negligence *per se* and (2) negligence and gross negligence.[2] The Town moved for summary judgment. Following a hearing, the trial court found there was no genuine issue of material fact and granted summary judgment in favor of the Town. Mr. Saad appeals.

## III.    Analysis

Mr. Saad has sued the Town for negligence (under theories of ordinary negligence and negligence *per se*) and gross negligence.

We first address Mr. Saad's gross negligence claim. "[O]rdinary negligence

---

[1] We note that, in his verified complaint, Mr. Saad alleged that "upon information and belief" the backfilled area was six to twelve inches below the surrounding asphalt. Our Court, though, has consistently held that it is inappropriate for a trial court at summary judgment to give weight to any allegation made upon information and belief. *See*, *e.g.*, *Asheville Sports Props., LLC v. City of Asheville*, 199 N.C. App. 341, 345 (2009) (noting that statements made "upon information and belief" in an affidavit or verified complaint "do not comply with the 'personal knowledge' requirement" required for affidavits at summary judgment). Therefore, in recounting the facts, we do not give weight to any allegation in Mr. Saad's complaint made "upon information and belief."

[2] Mr. Saad also brought claims against the construction company building the house. However, Mr. Saad has voluntarily dismissed those claims without prejudice.

involves inadvertence or carelessness," whereas gross negligence involves wanton conduct where a defendant "acted with a bad purpose or with reckless indifference to [a] plaintiff's rights." *Cullen*, 386 N.C. at 382.

Based on our review of the record, we conclude that Mr. Saad has not forecasted evidence to put at issue whether the Town was *grossly* negligent. Assuming the Town failed to provide a warning of a two-inch depression in the bicycle lane caused by the backfilled area, Mr. Saad has not forecasted evidence from which a jury could conclude that the Town acted with a bad purpose or with reckless indifference. We, therefore, affirm the trial court's grant of summary judgment to the Town on Mr. Saad's gross negligence claim.

We now turn to Mr. Saad's claims for negligence.

"The common law claim of negligence has three elements: (1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that legal duty, and (3) injury proximately caused by the breach." *Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 450 (2022).

We have recognized that municipalities may be subject to negligence claims for defects in a travel way, as follows:

> Municipalities are responsible only for negligent breach of duty, which is made out by showing that (1) a defect existed, (2) an injury was caused thereby, (3) the [municipality] officers knew, or should have known from ordinary supervision, the existence of the defect, and (4) that the character of the defect was such that injury to travelers therefrom might reasonably be anticipated.

*Desmond v. City of Charlotte*, 142 N.C. App. 590, 592−93 (2001) (citation and internal marks omitted).  "It is not every defect in a street or sidewalk which will render a city liable to a person who falls as a result thereof.  Trivial defects, which are not naturally dangerous, will not make the city liable for injuries occasioned thereby."  *Mosseller v. City of Asheville*, 267 N.C. 104, 109 (1966).

As pointed out by the Town in its brief, it has been held that a change in sidewalk elevation is a trivial defect if the difference is only a couple of inches.  *See, e.g., Desmond*, 142 N.C. App. at 593 (at least one-half inch sidewalk depression); *Joyce v. City of High Point*, 30 N.C. App. 346, 348 (1976) (one-to-two-inch sidewalk irregularity); *Bagwell v. Town of Brevard*, 256 N.C. 465, 466 (1962) (approximately one-inch change in sidewalk elevation).

Our Supreme Court has explained that an inconsistency in a walkway may, but does not typically, arise to the level of negligence on the part of the municipality:

> The existence of a hole or depression, or a material inequality or unevenness, or a gap in a sidewalk or crosswalk may constitute such negligence on the part of a municipality as will render it liable to pedestrians for injuries caused thereby.
>
> But a municipality cannot be expected to maintain the surface of its sidewalks free from all inequalities and from every possible obstruction to mere convenient travel, and slight inequalities or depressions or differences in grade, or a slight deviation from the original level of a walk due to the action of frost in the winter or spring, and other immaterial obstructions, or trivial defects which are not naturally dangerous, will not make a municipality liable for injuries occasioned thereby.

> The fact that the surface of a walk may have become uneven from use, or that bricks therein may have become loose or displaced by the action of the elements, so that persons are liable to stumble or be otherwise inconvenienced in passing, does not necessarily involve the municipality in liability, so long as the defect can be readily discovered and easily avoided by persons exercising due care, or provided the defect be of such a nature as not of itself to be dangerous to persons so using the walk.

*Houston v. City of Monroe*, 213 N.C. 788, 790−91 (1938) (concluding demurrer was proper where crosswalk depression was up to two-and-a-half inches).

However, our Supreme Court has also held that *it was a jury question* whether a city was liable for a pedestrian's injury from falling due to a defect in a sidewalk where the city knew of the defect and the injured pedestrian had no notice of the defect. *Bell v. City of Raleigh*, 212 N.C. 518, 519−20 (1937).

The forecasted evidence here, taken in the light most favorable to Mr. Saad, shows that the Town knew of the "backfilled" condition of the section of the bicycle lane where Mr. Saad had his accident. It is uncontested that the Town's own employees performed the work to backfill that section.

Further, there is forecasted evidence from Mr. Saad's verified complaint that on the night of Mr. Saad's accident there was nothing in front of the section warning oncoming cyclists of the backfilled area. Indeed, the facts here involve a lane of travel for bicyclists, rather than a lane of travel for pedestrians, as was at issue in the cases cited above. Because a cyclist travels faster than a pedestrian, it is reasonable that

a cyclist, especially one riding at night, would have less opportunity to discern an inconsistency in the lane of travel than a pedestrian.

Mr. Saad argues the Town was negligent based on a "negligence *per se*" theory, contending the Town violated one of its safety ordinances, specifically Section 16-47, which requires that one who has excavated a lane of travel place sufficient warnings to put travelers on notice, as follows:

> It shall be unlawful for any person to make or cause to be made any excavation of any kind in the town in or along or near any street without placing and maintaining proper guardrails and signal lights or other warnings at, in or around the same, *sufficient to warn the public* of such excavations and to protect all persons using reasonable care from accidents on account of the same.

Surf City, N.C., Code, § 16-47 (2023) (emphasis added).

Our Supreme Court has instructed as follows:

> The general rule in North Carolina is that the violation of a public safety statute constitutes negligence *per se*. A public safety statute is one imposing upon the defendant a specific duty for the protection of others. Significantly, even when a defendant violates a public safety statute, the plaintiff is not entitled to damages unless the plaintiff belongs to the class of persons intended to be protected by the statute and the statute violation is a proximate cause of the injury.

*Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 326 (2006) (cleaned up).

We conclude that the ordinance is a public safety statute and Mr. Saad belongs to the class of persons intended to be protected by the ordinance. It is undisputed that the Town caused the excavation to take place. And based on Mr. Saad's

allegation in his verified complaint, there is an issue of fact whether the Town placed something in front of the backfilled site "sufficient to warn the public" of the danger.

The Town makes several arguments as to why it was entitled to summary judgment, which we address in turn.

First, the Town contends that the forecasted evidence shows that Mr. Saad was contributorily negligent as a matter of law. We disagree.

Our Supreme Court has explained contributory negligence as follows:

> Every person having the capacity to exercise care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant, contributes to the injury complained of, he is guilty of contributory negligence.

*Clark v. Roberts*, 263 N.C. 336, 343 (1965). Further, it "is not necessary that [a] plaintiff be actually aware of the unreasonable danger of injury to which his conduct exposes him. [A] [p]laintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673 (1980).

Here, the Town contends that Mr. Saad was contributorily negligent by failing to operate his electric scooter with reasonable care while riding in a bicycle lane, at a high speed, at night, and with limited visibility. *See Clark*, 263 N.C. at 343 ("Ordinary care is such care as an ordinarily prudent person would exercise under

the same or similar circumstances to avoid injury."). "Only where the evidence establishes the plaintiff's own negligence so clearly that no other reasonable conclusion may be reached is summary judgment to be granted." *Nicholson v. Am. Safety Util. Corp.*, 346 N.C. 767, 774 (1997).

There was evidence that the scooter was traveling approximately fifteen miles per hour. We conclude this forecasted evidence is such as that a jury must determine whether Mr. Saad acted with reasonable care in operating his electric scooter.

The Town also argues that Mr. Saad was contributorily negligent *per se*, contending that Mr. Saad violated both a Surf City town ordinance and a North Carolina statute by operating an electric scooter in a bicycle lane.

A Town ordinance prohibits motorized vehicles on all bikeways. Surf City, N.C., Code, § 17-162 (2023). And the North Carolina statute requires that "[t]he headlamps of motor vehicles shall be so constructed, arranged, and adjusted that . . . they will at all times mentioned in G.S. 20-129, and under normal atmospheric conditions and on a level road, produce a driving light sufficient to render clearly discernible a person 200 feet ahead . . ." N.C.G.S. § 20-131 (2023).

However, for a plaintiff's violation of the law to constitute contributory negligence *per se*, the violation must be a proximate cause of the plaintiff's injuries—akin to how a defendant's violation of law must be a proximate cause of a plaintiff's injuries to constitute negligence *per se*. *See Short v. Chapman*, 261 N.C. 674, 680 (1964) ("It is a fundamental principle that the only contributory negligence of legal

importance is contributory negligence which proximately causes or contributes to the injury under judicial investigation."). Here, even if we were to determine that the ordinance and/or statute cited by the Town applied to Mr. Saad and that he violated the ordinance and/or statute, we cannot conclude on this record whether such a violation was a proximate cause of Mr. Saad's injuries as a matter of law. As our Supreme Court has instructed,

> [w]hat is the proximate cause of an injury is ordinarily a question to be determined by the jury as a fact in view of the attendant circumstances. When more than one legitimate inference can be drawn from the evidence, the question of proximate cause is to be determined by the jury. It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not. But that is rarely the case.

*Oxendine v. Lowry*, 260 N.C. 709, 713 (1963) (citations and quotation marks omitted).

For instance, it may be that a jury would determine that Mr. Saad would have suffered the same fate had he been on a bicycle traveling fifteen miles per hour rather than an electric scooter traveling that same speed. In sum, viewed in the light most favorable to Mr. Saad, the forecasted evidence fails to show whether Mr. Saad's injury was proximately caused by the scooter's headlamps or by riding an electric scooter in a bicycle lane, rather than a bicycle. *See Nicholson*, 346 N.C. at 774 ("Issues of contributory negligence, like those of ordinary negligence, are ordinarily questions for the jury and are rarely appropriate for summary judgment").

Next, the Town argues the trial court lacked subject matter jurisdiction over

this matter because the bicycle lane where the injury occurred is owned and controlled by the Department of Transportation (an agency of the State of North Carolina) and that, therefore, a claim should have been brought under the North Carolina Tort Claims Act, N.C.G.S. § 143-291 (2023).

The Town's contention, however, fails because Mr. Saad has sued the Town, a municipality; he has not brought a claim against the State. We conclude that the trial court has jurisdiction over the tort claims brought by Mr. Saad against the Town.

Finally, the Town contends it is protected by governmental immunity as a matter of law. We, however, have stated that

> the doctrine of governmental immunity will not act as a shield to a municipality from liability for torts committed by its agencies and organizations when the activity of the municipality is proprietary in nature. The law is clear in holding that the operation and maintenance of a sewer system is a proprietary function where the municipality sets rates and charges fees for the maintenance of sewer lines.

*Harrison v. City of Sanford*, 177 N.C. App. 116, 121 (2006) (citations and quotation marks omitted). Here, the Town has admitted that it sets rates and charges fees for the maintenance of sewer lines. *See Vill. of Pinehurst v. Reg'l Invs. of Moore, Inc.*, 330 N.C. 725, 729 (1992) ("[O]wnership and operation of a water and sewer service is a proprietary function operated for a profit."). And there is forecasted evidence that the Town caused the excavation in the bicycle lane to provide access to its sewer line to a new customer.

IV.     Conclusion

The trial court improperly granted summary judgment in favor of the Town on the issue of negligence (under theories of ordinary negligence and negligence *per se*) but properly granted summary judgment in favor of the Town on the issue of gross negligence.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

Judges MURPHY and THOMPSON concur.